PATSY OIL & GAS CO. v. ODOM.

*96 P. 2d 302.*

No. 28999. Sept. 26, 1939.

Rehearing Denied Nov. 28, 1939.

Busby, Harrell & Trice and Hobart G. Orton, for plaintiff in error.

Grigsby & Andrews, for defendant in error.

RILEY, J. This is an appeal seeking reversal of a judgment of the district court of Pontotoc county in favor of defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, in an action to recover damages for personal injury.

On and prior to July 23, 1937, defendant was operating an oil and gas lease near Oil Center in Pontotoc county. It had been operating oil wells on said lease for about five years. Lee Campbell, William Thomas, and Ray Young were employed by defendant in operating said lease. Lee Campbell, with his wife and children, lived in a house located on said lease. He had three small children about 5, 9, and 11 years old.

Plaintiff, Donald Odom, then about 9½ years old, lived with his parents some three miles from where Campbell lived. Donald is a nephew of Lee Campbell's wife.

On July 22, 1937, Lee Campbell, his wife, and children were visiting at the home of M. L. Odom, plaintiff's father. That evening plaintiff went home with his uncle, Lee Campbell, and his family to spend the night. On the morning of July 23, 1937, plaintiff, Donald Odom, and Billy Joe Campbell, then about nine years old, son of Lee Campbell, while playing in an old engine house, located

some 40 or 50 feet from the house in which Lee Campbell lived, found four dynamite caps. Not knowing what the dynamite caps were, they took them out, went some distance from the house, and when plaintiff applied a lighted match to one of the caps which he held in his left hand, the cap exploded and blew off the thumb, index and middle fingers of the left hand, and injured the third or ring finger.

He brought this action against the company to recover damages. Trial was had to a jury resulting in a verdict and judgment for plaintiff in the sum of $5,000, and defendant appeals.

The first proposition presented is that the evidence is insufficient to show negligence on the part of defendant.

Defendant asserts that unless the case comes within the "attractive nuisance" doctrine, the judgment should be reversed.

Plaintiff asserts that the "attractive nuisance" doctrine can be eliminated from the case, and the judgment should be sustained on the negligence of defendant alone.

Plaintiff in his petition alleges in substance the facts heretofore stated, and that the injuries so sustained were caused by the negligence and carelessness of defendant, in that defendant owned and maintained on said lease a small frame building located about 50 feet from the residence of Lee Campbell, which had been used for the storage of a "pulling unit," but which at the time was virtually empty except for a few pipe fittings, tools, etc.; that in one corner of said frame building there was a locker in which some tools, fittings, etc., were stored; that said building had been left open and the locker was likewise left open, so that said building and locker were at all times easily accessible to the children; that said children while at play in said building discovered some dynamite caps which had been placed therein, took them from said building, and plaintiff, not knowing the danger in handling the caps, touched a lighted match

to one of the caps resulting in the explosion and the consequent injury, and it was further alleged:

"That by reason of the close proximity of the aforementioned building to the house in which the said Lee Campbell lived, and by reason of said building being unlocked, open and accessible at all times, as well as the locker unit therein being open and accessible at all times, and by reason of the nature of the building, and the various instruments kept therein, said building and its contents were very inviting, alluring, enticing and attractive for children of tender years to play in, and constituted an attractive nuisance, under the circumstances."

It will thus be seen that plaintiff bases his claim in part, at least, on the "attractive nuisance" doctrine.

The evidence discloses that some ten days or two weeks before the accident, Lee Campbell, the employee of defendant, placed the dynamite caps in the frame building.

Campbell testified in connection with the transactions as follows:

"Mr. Campbell, do you know Mr. Flowers, who testified here? A. Yes, sir. Q. Did you know those dynamite caps were in that engine house? A. Yes, sir. Q. State how you knew that? A. Well, I put them in there myself. Q. You put them in there yourself? How did you come into possession of them? A. Delmer Flowers gave them to me. Q. Why did he give them to you? A. We were intending to shoot out some forms out there where we had moved a rig and he brought them up there to do that. Q. Who told him to bring them up there? A. I did. * * * Q. When he brought them up there, how many days was that before this accident happened? A. I don't know exactly, possibly two weeks. Q. Did he give them to you? A. Yes, sir. Q. Where were you when he gave them to you? A. There at the toolhouse. Q. What did you do with them? A. Put them up over a rafter on the top of the toolhouse. Q. How high is that from the floor? A. I judge about eleven feet."

The boys both testified that they found the caps on the floor in the open locker.

Photographs showing the residence,

the frame building in which the caps were found, and the immediate surroundings were introduced in evidence. They show the residence to be in an open space without shade trees, and substantially no place for children to play other than in the hot outdoors sunshine. The doors of the frame building are shown to have been open. In fact, one door was off entirely. The evidence further shows that the locker in which the caps were found was open or at least unlocked. The question is whether this case comes within the "attractive nuisance" doctrine.

Attention is called to the great divergence of judicial opinion concerning this doctrine and the application thereof.

The doctrine was discussed at length in City of Shawnee v. Cheek, 41 Okla. 227, 137 P. 724. Much of the discussion therein is devoted to the applicability of the doctrine as applied to mere omissions. The doctrine is there recognized as being applicable to omissions involving reckless disregard for the safety of merely technical and reasonably anticipated trespassers such as children of tender years, in respect to obviously and seriously dangerous artificial condition of premises.

It is said that even acts of omission may in such circumstances amount to wantonness on the part of a landowner. In the opinion it is stated:

"There appears to be no denial of the doctrine of liability to injured trespassers for wanton acts of a landowner; but a great many of the cases, with which we are unable to agree, in effect, limit such liability to acts of commission, thus holding, in effect, that there can be no wantonness in an omission, or, if so, that it creates no liability to a trespasser, even though the trespass be merely technical and even unconscious. It is no doubt true that wantonness should not be inferred from the mere omission to make safe a dangerous place upon one's premises in the absence of sufficient evidence to show a reckless disregard for the life, limb, body, or health of another or others; but, if wantonness be proven, we are of opinion that it is immaterial whether it consists of an act of commission or a mere omission."

And:

"The walls and spaces of a deserted building such as this, where children may play hide and seek, and hunt hens' nests, as the evidence shows they did do about this building, and otherwise gratify their childish instincts, are undoubtedly exceptionally attractive places to children, and an intrusion by children of the age of the deceased child should be presumed, in the absence of evidence to the contrary, to be not merely a technical, but an unconscious trespass."

In this case we have acts of commission which of themselves transformed an otherwise harmless vacant building where children might play, and wherein, under the circumstances shown to exist in this case, any person of ordinary intelligence would expect the children to enter in order to find a place of amusement where at least shade and relief from the hot sun could be found, into an exceedingly dangerous place. The act referred to was that of placing the dynamite caps, highly dangerous and of themselves attractive to children, in said building. True, defendant contends that the evidence shows that Lee Campbell exercised due care and placed the caps well out of reach of the children. But the evidence also shows that the caps were found on the floor of the locker which was left open. Lee Campbell in his testimony was somewhat evasive as to the degree of care exercised in looking after said caps after they were placed where he said he placed them. With reference thereto he testified:

"Q. When did you see those caps next after you put them up there on that roof? A. Well, I am not sure that I ever saw them after I put them up there. Q. Do you remember seeing them after that? A. I am not sure about that. Q. Did you ever use them or any of them after that? A. No, sir. Q. Did you ever have any occasion to take them down? A. No."

With reference to the locker and how he had used it, he testified:

"Q. The locker door—did the locker have a door on it? A. Yes, sir. Q. What

did you have stored in the locker? A. A few wrenches and first one thing and another and I had had nine sticks of dynamite in there. Q. Had what? A. Nine sticks of dynamite. Q. In the locker? A. Yes, sir. Q. Was that door locked? A. No. Q. Did you close that door? A. No, I didn't have it locked, it was possibly closed. Q. But it wasn't locked? A. No, sir."

In view of such testimony the jury was warranted in inferring that he was mistaken as to where he had placed the dynamite caps or that he had taken them down and placed them in the locker and had forgotten about it.

Ramage Mining Co. v. Thomas, 172 Okla. 24, 44 P. 2d 19, holds:

"The only duty the owner of premises owes a trespasser is not to willfully or wantonly injure him; ordinarily, no duty of anticipating his presence is imposed. In the case of a licensee the landowner must not wantonly and willfully injure him, and if the premises are inherently dangerous or if there is a dangerous instrumentality thereon, such as highly dangerous explosives, exposed electric wires and the like, it is usually willful or wanton negligence not to exercise ordinary care to prevent injury to a person who is actually known to be, or reasonably is expected to be within the range of such danger."

And:

"The rule of attractive nuisance arises in a case where the premises are sufficiently attractive to allure children to the danger, and where the situation is such as to suggest to the landowner the probability of such allurement and an accident arising therefrom."

And:

"The doctrine may be invoked in a case where the child injured by reason of an attractive nuisance is an invitee, a licensee, or trespasser, a child under seven years of age, or, in the absence of evidence of capacity, between seven and 14 years of age, being presumed to be incapable of guilt of more than technical trespass."

If wantonness, in the way of reckless disregard for the safety of children of tender years in respect to obviously dangerous and seriously artificial condition of premises, were ever shown in any case, we think it is shown in this case insofar as the conduct of Lee Campbell is concerned. His admitted conduct in placing this highly dangerous explosive, unguarded and unsecured, in this open frame building where it is apparent at a glance that his own children, as well as plaintiff, his nephew and invited guest, were most likely to go, was reprehensible to say the least.

We are cited to a number of cases from other jurisdictions, including United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 36 A.L.R. 28, which hold, in effect, that the owner of land owes no duty to a mere trespasser, young or old.

We are not inclined to hold that a landowner may create a highly dangerous situation before children of tender years, incapable of realizing the danger or the wrong in entering on the premises, while at the same time he must know, by reason of surrounding conditions and circumstances, that such children will almost certainly enter upon the premises, and when disaster comes stand upon his rights as the owner of the property and plead the wrongful trespass by the children as an excuse for his wanton conduct.

Another question, however, is presented.

The only positive evidence on the question of defendant's connection with the placing of the dynamite caps in the building is that it was done without the knowledge or consent of the defendant company. That Lee Campbell procured the caps to be brought on the premises for the purpose of shooting out some forms from which a rig had been moved; that he did so without any direction so to do from his employer or the superintendent of the lease. The president of the company and his son, who was lease superintendent, each testified that he did not authorize or direct Campbell to blow out the forms, nor to bring dynamite caps on the lease; that Campbell had no

authority whatever to bring the dynamite caps on the premises, and that Lee Campbell had no authority to do anything on the lease but to work; that his only duties were to work eight-hour shifts. When asked whether Lee Campbell had any authority over the other workers, Mr. H. W. Marcum, the president of the company, replied, "I don't think so, first one man and then the other would work. * * *"

Lee Campbell testified:

"Q. Now, Lee, you live in a house there furnished by the Patsy Oil & Gas Company there on the lease, don't you? A. Yes, sir. Q. And you keep track of the time for the various men who work there and you turn that in? A. Yes, sir. Q. And you are in charge of the lease, that is right, isn't it? A. Well, no, not altogether, I am over the laborers. Q. How is that? A. I am over the working men out there."

Taking the testimony of defendant's witnesses on this point as true, it does not necessarily follow that defendant company would not be liable for the acts of its agent and employee under the circumstances of this case. In Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1 (citing Manfield v. Wm. J. Burns Detective Agency [Kan.] 171 P. 625), it is held:

"The general rule is that a master or principal is liable for the tortious acts of his servant or agent where such acts are incidental to and one in furtherance of the business of the master or principal, and this is true, although the servant or agent acted in excess of the authority conferred upon him, or willfully or maliciously committed the wrongs."

And:

"In general terms it may be said that an act is within the 'course of employment' if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not

arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account." Mechem on Agency, § 1960.

Evidently there was no apparent external, independent, and personal motive on the part of Campbell in bringing, procuring, and storing the dynamite caps. The reason for his having had the nine sticks of dynamite in the locker is not given. Ordinarily a mere servant does not go out, at his own expense, and procure explosives for which he has no use. Evidently he considered the procurement of the dynamite and dynamite caps as in furtherance of his master's business, though it is possible he acted mistakenly or ill-advisedly, and in excess of authority conferred upon him.

Under all the facts and circumstances in evidence, the question of whether Lee Campbell was acting for and on behalf of his employer and under its direction, or was acting independently and on his own initiative in procuring and storing the dynamite caps, was a question of fact for the jury.

It is contended that at the time and place of his injury, plaintiff was in the care and custody of his uncle, Lee Campbell, and defendant cannot be held to answer for the negligence, if any, of plaintiff's custodian.

In support of this contention, defendant cites Shell Petroleum Co. v. Beers, 185 Okla. 331, 91 P. 2d 777, wherein it is said:

"We think the defendant could reasonably expect the plaintiff's father, who was the pumper in charge of the operations on the lease, to protect his child against injury by the pumping equipment. While the negligence of the parents of the plaintiff cannot be imputed to her (Lone Star Gas Co. v. Parsons, supra), yet the right of the company to reasonably expect them to protect her goes to the question of the company's failure to exercise ordinary care. Pennington v. Little Pirate Oil & Gas Co. (Kan.) 189 P. 137, Magnolia Pet. Co. v. Porter (Tex. Civ. App.) 22 S. W. 2d 695."

Examination of the two cases cited

will disclose that they have no application to a case of this nature. They were actions brought by the parents in their own name and for their own benefit to recover damages for alleged wrongful death of their children. Here the action is brought by the child for his own benefit.

The question here presented, then, is whether the negligence of Lee Campbell, assuming that he stood in the position of loco parentis toward the plaintiff, was imputable to the plaintiff. Shell Petroleum Co. v. Beers, supra, recognizes the rule that negligence of the parents may not be imputed to their child. This has long been the rule in this state.

In Atchison, T. & S. F. R. Co. v. Calhoun, 18 Okla. 75, 89 P. 207, it is held:

"In an action by an infant of tender years, in its own right, for personal injuries arising from negligence of a railway company, the fault or negligence of its mother or a third party, if any, contributing to such injury cannot be imputed to the child."

Chickasha St. Ry. Co. v. Marshall, 43 Okla. 192, 141 P. 1172, holds:

"The doctrine of imputed negligence is not recognized in this jurisdiction."

In Gulesserian v. Madison Ry. Co., 172 Wis. 400, 15 A.L.R. 406, it is said that:

"Bishop (Noncontract Law, sec. 573) characterizes the imputed negligence doctrine as to children 'as flatly in conflict with the established system of the common law as anything possible to be suggested. The law never took away a child's property because his parent was poor or shiftless or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it'."

The contention cannot be sustained.

Defendant also contends that the court erred in its instruction in that there was no attempt to define for the jury "an attractive nuisance," as to limit the liability of the defendant by any of the recognized requisites of that doctrine.

In effect, the contention is that the instruction going to the right of plaintiff to recover was not complete in that it omitted certain definitions and limitations which defendant now thinks should have been included.

Defendant contented itself with a simple exception to the instructions, and offered no instruction more fully covering the question. It is well settled now that it is the duty of counsel to aid the court in the function of instructing the jury in order that the jury may be fully informed as to all the law governing the case, that the trial court be enabled to correct at once any mistake that may have been made in instructing them. And where the charge of the court does not fully cover all phases of the case, counsel is bound to call attention of the court to the mistake or omission by an appropriate request, or be precluded from making such failure available as reversible error. Seay v. Plunkett, 44 Okla. 794, 145 P. 496; Miller v. Tennis, 140 Okla. 185, 282 P. 345.

By reason of defendant's failure to request an instruction more fully covering the issues, it is not in a position to urge here the alleged error.

There being no substantial error, the judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, and DANNER, JJ., concur. DAVISON, J., not participating.