SINCLAIR PRAIRIE OIL CO. v. SMITH.

*99 P. 2d 903.*

No. 29384.   Jan. 30, 1940.

Rehearing Denied March 5, 1940.

632

Edward H. Chandler, Summers Hardy, and W. H. McBrayer, all of Tulsa, for plaintiff in error.

B. A. Hamilton and S. J. Clendinning, both of Tulsa, for defendant in error.

DANNER, J. The following statement incorporated in the brief of the plaintiff in error, hereinafter referred to as defendant, is a fair appraisal of the allegations of the plaintiff's petition, as well as the issue presented for our determination:

"January 13, 1939, defendant in error, hereinafter called plaintiff, filed a petition in the district court of Tulsa county, Oklahoma, alleging that she was a minor, four years of age, and that said action was brought by and through her next friend and father, Chas. D. Smith, and alleging that on the 20th day of July, 1937, she received certain injuries which were the direct and proximate result of the negligence and carelessness of the plaintiff in error, hereinafter called defendant; that on or about said date defendant was in possession of premises described as the A. V. Thomas farm, being the southwest quarter (S.W. ¼) of section 24, Township 20, range 12, Tulsa county, Oklahoma, and for a number of months prior to said date defendant owned and operated an oil well on the premises known and designated as the A. V. Thomas Well No. 30; that said well was pumped by the use of an ordinary pumping jack and that defendant maintained, in connection therewith and as a part of said pumping apparatus, a swing or sweep that turned to and fro; that said swing or sweep was operated by power and was extremely hazardous and dangerous to children; that same was maintained in a densely populated residential suburban section of the city of Tulsa and immediately off a public road; that said swing or sweep was attractive and dangerous to children, and by reason of its location was a constant lure and attraction to children; that defendant had knowledge of, or was charged with the knowledge that, said swing or sweep was dangerous to children and constituted an allurement to children residing in the community; that the plaintiff on said date, and while playing upon said swing, caught her foot in said swing, resulting in her right hip, right leg and right foot being twisted, and resulting in the muscles, tendons and ligaments thereof being lacerated and torn and the covering of the bone of the right hip being injured, by reason of which injuries plaintiff alleged damages in the sum of ten thousand dollars.

"The action was brought under what is known in law as the attractive nuisance doctrine.

"Defendant filed a general denial, and said action was tried to a jury upon the issues so made and resulted in a verdict for plaintiff in the sum of five hundred dollars.

"Thereafter, and under date of May 5, 1939, there was entered in said cause an order overruling motion for new trial, and defendant prosecutes this appeal."

For reversal of the judgment the defendant assigns 15 alleged errors in the trial of the cause which, simmered down, present the question whether the evidence is sufficient to sustain the judgment under the attractive nuisance doctrine contended for by the originator of the action. It is conceded by the defendant that if the facts presented on the trial are sufficient to bring the case within the attractive nuisance rule, the evidence is sufficient to sustain the judgment.

The evidence developed the following dominant facts: That for a number of months prior to July 13, 1937, the date of the injuries complained of, the defendant owned and operated an oil well on a tract of leased land in a residential suburban section of the city of Tulsa; the surface of the land being divided, subsequent to the drilling of the well, into lots and blocks, a number of which were sold to the public.

Chas. D. Smith, plaintiff's father, was the owner of one of the lots, upon which he had built a small house. The plaintiff lived with her parents in this home, which was located about 200 feet from, and in plain view of, the oil well, and

swing or sweep complained about in the petition. Around 20 families, with about 25 small children, lived in homes located in the sparsely settled community in the neighborhood of the defendant's well.

The swing or sweep alluded to in the case is constructed of six and five-eighths casing welded in a "V" shape set on an angle of 45 degrees which is attached to a four and one-half foot steel shaft set in the ground, in concrete, with a concrete hub around the shaft. The shaft is stationary and the swing or sweep is operated from the power plant with a completed stroke, or swing, of about 36 inches. The sweep is set six or eight inches above the ground. The casings forming the "V" at the open or lower end are about five feet apart. The rods used for pumping—one extending to the power plant, and the other to the well—are connected to the "V" by clevises. The apparatus is constructed, so defendant's witnesses testified, to obtain power from the plant without "going across some lots and through people's yards." On the date alleged the plaintiff, then about 19 months old, with some other children of the neighborhood, entered upon the defendant's lease, climbed upon the swing, fell off and received the injuries complained of. While the evidence on the point is not clear, it appears probable that in falling from the swing the plaintiff's leg became encased between the swing and the ground. The injuries are described by Dr. Ian MacKenzie, plaintiff's physician, as follows:

"A. I first saw her on July 20, 1937. Her father carried her into the office and said she had hurt her right leg, but he didn't know what occurred. An examination of the right leg at the region of the hip showed some swelling as compared with the left leg, and some black and blue marks just below the region of the right hip, over that region of the right hip, and there was the tightness that could be noticed just in the examination and was borne out by feeling it with the hand. The skin of the right leg was tighter than it should be normally, and any pressure on that area would cause pain. And there was just a very slight break in the skin, some of the top layer of the skin had been scraped. Q. What was your diagnosis? In other words, what did you find the child was suffering from? A. Well, I decided there was no fracture of the bone, and no dislocation of the hip joint, and that it was a combination bruise of that right leg and bruise and sprain or strain of the muscles."

On cross-examination the doctor testified as follows:

"Q. And you had these X-rays taken in order to verify your opinion acquired by an examination? A. Yes, sir. Q. And your conclusion is that the extent of the injury was a slight bruise and muscle strain, with no permanent effects whatever? A. That is right, yes, sir."

The proof shows that the swing was constructed, operated, and maintained as ordinary equipment such as is generally used by producers of oil in this state. It appears, too, that it is not customary in the oil and gas business to erect fences around, or to construct safety devices upon, sweep apparatus of the character here in issue. In fact, from the evidence, fences or safety devices in connection with the operation and maintenance of the machinery here under consideration are unheard of. Clearly, under the proof, and the law applicable, the defendant is absolved from liability unless we may say, under all the facts and surroundings present in the case, that liability attaches under the attractive nuisance doctrine. It is unnecessary to go far afield in search of authorities on the subject, or to attempt to reconcile the various and varied decisions of the courts. From the decisions it appears obvious that no fixed rule may be adopted, applicable to all cases; generally, each case must be decided upon the particular facts and circumstances existent. Lone Star Gas Co. v. Parsons, 159 Okla. 52. 14 P. 2d 369; McKiddy v. Des Moines Elec. Co. (Iowa) 206 N. W. 815. Decisions of this court on the attractive nuisance doctrine are quite fully assembled, classified, and applied in Shell Petroleum Corp. v. Beers, 185 Okla. 331, 91 P. 2d 777. See, also, Patsy Oil & Gas Co. v. Odom, 186 Okla. 116, 96 P. 2d 302.

Appropriate is the language of this court in Lone Star Gas Co. v. Parsons, supra:

"The problems involved would be more simple if we would recognize that we were dealing merely with a problem of whether a duty to exercise care should be imposed, or whether, conceding there was some duty, sufficient care was used, and that the doctrine involves an exception to the rule denying protection to trespassers.

"The doctrine presents a necessity of compromise between the impolicy of imposing duties restricting a landowner in the use which he makes of his premises and what he does upon them, and a probability of harm that urges the imposition. It is with reluctance that courts impose such duties upon landowners. They will not impose a duty to alter the natural condition of premises, nor a duty to exercise care in the safekeeping of instrumentalities that are common and are in common every day use. The doctrine is limited to instrumentalities that are unusual and with which children do not commonly come into contact, which are especially dangerous in their nature, and which are of a character to prompt the curiosity and interest of an infant and thereby lead to his tampering with them. Nor will the doctrine be applied to protect an infant who is of sufficient age and experience to be conscious of an appreciable element of danger inhering in the tampering with the instrumentality to an extent that it would be expected that he would not jeopardize his safety by tampering, or where he has reached the age of such responsibility that he should be intelligently conscious of the want of right to tamper with an instrumentality belonging to another and not apparently abandoned or valueless, or where the child meddles with the instrumentality in a spirit of bravado. But even if such a condition does not exist and the infant is at the age that is described as 'of tender years,' is ignorant of the danger, lacking in intelligent consciousness of lack of right to trespass, the instrumentality is uncommon, unusually dangerous and attractive, there is also required a probability of harm, so that the duty will not be imposed unless there is such reasonable probability of the presence of children near the instrumentality as to indicate the probability of harm. But even then the difficulties have just begun, for all that is just the weight in one of the pans in the balances, and against those factors must be balanced the interest of the landowner in the enjoyment of his premises or in their economic use, and the social interest, which by reason of the interest of society in the safety of its children urges the imposition of the duty, but in protection of social welfare and economic progress operates as a check to deny imposing a duty in other than exceptional circumstances, and only when the imposition is reasonably feasible, not unduly burdensome, and can be seen to be fairly justified by a fair evaluation of the factors presented in the particular case. And here appears the danger of classifying the infant as an invitee because of the attraction, for the use of this word immediately tends to drive from the mind a due consideration of a necessity of the weighing and evaluation of these other factors which are vital to the problem with the result that there is a tendency to impose the duty if it appears that the instrumentality was dangerous and some probability of harm to children was apparent. It is true that the law tends to classification because of the repetition of sets of circumstances having certain common factors, but due to the variation in the attendant circumstances found in connection with these common circumstances, we find the usual variation that is presented in negligence cases, so that the decision in one case cannot govern in the decision of another unless the attendant circumstances have been first given due consideration and found not to justify a rational distinction.

"So in these cases we have the question of how uncommon is the instrumentality; how unusually dangerous it is? how attractive is it; what probability is there of children coming in contact with it? whether the probability is localized so that harm can be avoided, or is there merely a high probability that at some time and in some place, children will come in contact with it, with nothing to indicate when and where the contact will come; how feasible is it to avoid danger of harm; how great would be the burden of avoiding or lessening danger of harm and the effect of imposing such duty? And one outstanding inquiry that is

often given scant consideration by the judges is the apparent intelligence of the child, his intelligent consciousness of the circumstances, and that he had reached the age where he would reasonably be expected not to tamper because of his appreciation of danger or appreciation of his want of right to tamper, so that no duty to protect him could reasonably be imposed."

In the present case the plaintiff, being but 19 months old, was incapable of comprehending any danger, if any, connected with the construction and operation of the sweep. Town of Depew v. Kilgore, 117 Okla. 263, 246 P. 606. Neither may we logically declare that the swing was not attractive and alluring. Perhaps no instrumentality is more inviting to a child than the rhythmical movement of a swing. 23 R. C. L. 93. It is the natural accompaniment to a mother's lullaby and an indispensable characteristic of the cradle of an infant. Its alluring, fascinating appeal reaches its climax in the man on the flying trapeze; an ever present, never ending attraction to young and old alike.

Furthermore, we are unable to agree with the defendant that the facts present a case of parental insufficiency in failing to guard plaintiff from contact with the instrumentality out of which the injuries grew. No mother's apron strings are ever long enough to continuously hold within their limits a healthy, curiously inclined offspring. Nature never intended, and the law does not require, an unreasonable restriction of the normal perambulatory tendencies of a robust child.

We are, however, brought face to face with the cold, stark facts revealed by the record here. The query is: What did the defendant leave undone in the operation of the sweep that a reasonably prudent person would have done, in the circumstances, to guard against injury to others? In the case it is not shown that before the accident, children had been around, about or near the swing or well, or that the defendant's attention had previously been called to the probability of children being attracted to the premises. One may not reasonably say that the swing itself, or in its operation, was an inherently dangerous instrumentality. It contained no concealed, hidden, or latent dangers. As stated, the apparatus was constructed, operated, and maintained as equipment of like character is generally used.

It is contended by the plaintiff that the presence of children in the vicinity of the well and sweep was sufficient grounds upon which the defendant might reasonably have anticipated that children would be attracted to the apparatus, play around it, climb upon it, and be injured as a result of so doing. The plaintiff cites no authorities on the particular point, but in 45 C. J. 761, we find the following rule announced:

"Another reason given by the rule is that the condition, appliance, or thing being of a nature calculated to attract children of tender years, the owner of, or the person maintaining, the same is under a duty of anticipating that such children will be attracted to approach, get upon, use, or play with it, and be injured as a result of so doing, and is therefore under a duty of guarding against the danger which they will thus encounter. In this connection, however, it is to be observed that a mere possibility of the presence of children who may be in danger is not sufficient to impose a duty upon the owner. It has been considered that in order to impose liability it must appear that defendant's knowledge with respect to the dangerous character of the instrumentality was superior to that of the child, and a fortiori, in the absence of any showing that the owner knew, or in the exercise of reasonable care should have known, of the condition causing the injury, liability cannot be predicated upon his failure to provide safeguards."

Whether, under facts similar to those here, the rule contended for by the plaintiff would apply to a populous community, thickly inhabited, we are not here called upon to decide. Ordinarily, the question is one for the jury to decide. Obviously, in the present case the question was resolved in favor of the plaintiff, and we are loath to interfere with the decision thus pronounced. While this

court has taken the more liberal view in considering attractive nuisance cases, Phillips Petroleum Co. v. Matthesen et ux., 171 Okla. 541, 44 P. 2d 56, we may not, however, safely extend the rule beyond the limits already fixed by the decisions of this court.

The attractive nuisance doctrine is based upon the law of negligence, and by reason of the foregoing considerations, plaintiff has failed to establish primary negligence. Shell Petroleum Corp. v. Beers, supra. In view of the record presented, we are persuaded that the court erred in its failure to sustain defendant's demurrer to the plaintiff's evidence.

The judgment is reversed and remanded to the trial court, with instructions to render judgment for the defendant.

BAYLESS, C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and RILEY, J., dissent. OSBORN, J., absent.