**J. C. PENNEY COMPANY, a corporation, Plaintiff in Error,**

v.

**Sharon CLARK, a minor, by her next friend, father and natural guardian, A. D. Clark, Defendant in Error.**

**No. 39303.**

Supreme Court of Oklahoma.

Nov. 21, 1961.

638 ■ ▉▉▉▉▉▉▉▉▉

Hudson, Hudson, Wheaton & Kyle, Tulsa, for plaintiff in error.

Joe H. Kennedy, Muskogee, for defendant in error.

BERRY, Justice.

On December 13, 1958, Mr. and Mrs. A. D. Clark entered plaintiff in error's (hereafter referred to as "defendant") retail mercantile store in Muskogee, Oklahoma, for the purpose of purchasing galoshes for defendant in error and her brother. While in the store Sharon fell from a stool used by defendant's employees in fitting shoes on prospective purchasers. As a result of the fall, Sharon, who was born in April, 1955, received a fracture to her left thigh bone.

In this action Sharon seeks to recover from defendant damages attributable to the mentioned injury. The action is predicated upon the proposition that defendant was negligent in providing and exhibiting an attractive nuisance for a child in that the stool was so constructed as to attract a child; that as a result of being attracted by the stool, Sharon was injured.

The jury, to whom the case was tried, returned a verdict in Sharon's favor. From order of the trial court denying defendant's motion for new trial, which was directed to judgment against defendant on the verdict, defendant perfected this appeal.

For reversal, defendant contends on the merits that "the doctrine of attractive nuisance is not applicable to the facts of this case."

The evidence bearing upon the respective contentions of the parties can be summarized as follows:

After entering the store, the Clark family went immediately to defendant's shoe department. Mr. and Mrs. Clark both testified that upon reaching the department they advised the clerk of their needs; that the clerk stated that defendant did not have in stock galoshes that would fit Sharon or her brother; that upon being so advised, they, together with the clerk, walked to a nearby table for the purpose of inspecting hunting boots displayed thereon; that while at the table, their backs were turned to Sharon who had remained in the shoe department; that while inspecting the boots they heard Sharon cry out; that they immediately went to Sharon who was lying on the floor near a stool which had overturned; that Sharon said to her mother that she "got her leg in the hole (of the stool), and that it turned over with (her)"; that it was subsequently learned that in falling Sharon had sustained an "oblique or spiral fracture of the middle thigh bone on the left" which resulted in her left leg becoming shorter than her right leg.

Mr. and Mrs. Clark both testified that they saw a stool in the open portion of the shoe department upon entering same and that no one moved the stool while they were in the department. The clerk testified that shortly after the Clark family entered the department he "sat down on the stool for a moment"; that upon arising he "pushed the stool (he) thought either part way under the chair, or at least the leading edge of the stool was equal to the leading edge of the chair". The clerk testified further that there were eight stools in the shoe department; that all of the stools were "very similar" or "identical" to the stool which was introduced in evidence and which is a part of the record before us; that he had worked "in three Penney stores, and all three had the same type stool"; that the same type of stool was used in three or four other stores. The manager of the store where the accident occurred testified that he had worked in seven of defendant's stores; that the same "type" of stool was used in all of the stores; that "most stores use a similar type of stool"; that they "might vary a little bit in the design, but basically they're all the same"; that "this is the first case that I have ever known of a child being hurt" on a stool used in one of defendant's stores.

The stool is 26" long, 9½" wide and 14½" high at the back. The metal portion of the stool consists of a bar treated with compound of Chromium. The bar is shaped in the form of a U immediately under the seat. The front of the stool rests on either end of the bar which extends upward at an angle to the top portion of the stool. The under portion of the seat is constructed of wood and the upper portion of a soft material covered with blue plastic material. Near the front of the stool a metal footrest covered with a compound is secured to the bars. The opening between the seat and the footrest is 4¾" long and 7¾" wide. This is the opening through which Sharon placed her foot before or in falling.

A photograph of a page of a catalog made available by a company engaged in selling stools for use in fitting shoes was introduced in evidence. The photograph depicts six stools, one of which is very similar in all particulars to the stool in controversy. It is argued that the opening between the seat and footrest of the stools so depicted is smaller than the one in the stool in evidence and one or more witnesses testified that the photograph tended to show that this was true. There is, however, no evidence that the opening in one or more of the stools was not of such size as to permit the foot of a small child to pass through same.

At the conclusion of the trial, defendant moved the court to direct the jury to return a verdict in its favor, which motion was denied.

■ While the attractive nuisance doctrine is recognized in this jurisdiction, it has been pointed out that application thereof requires the weighing of the interest of society in the safety of children against the inherent right of a proprietor to engage in a lawful business. See Sinclair Prairie Oil Co. v. Smith et al., 186 Okl. 631, 99 P.2d 903, and cited cases.

At p. 813, Sec. 147, 38 Am.Jur. "Negligence", it is stated that "An owner of land is not required to provide against remote or improbable injuries to children who come upon the premises, but only against such injuries as reasonably can be anticipated to occur from the object or instrumentality involved." At p. 813, Sec. 149 of the same volume of Am.Jur., it is stated that "The fact that a thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. Clearly, not everything which may possibly excite the curiosity of a child amounts to an attractive nuisance. If everything containing some element of danger to a boy, of which a plaything possibly can be made by him, amounts to an attractive nuisance, there is almost no limit to the application of the doctrine. In order to invoke liability under the attractive nuisance doctrine, it must be shown that the instrumentality or condition relied upon to constitute the attraction was a sufficient allurement as likely to attract children upon the premises, and that the instrumentality or condition was fraught with such danger to young children as reasonably to require that precautions be taken to prevent children from coming in conflict therewith. The tendency of the courts is to exclude from the application of the attractive nuisance doctrine things not in their nature dangerous or peculiarly alluring or attractive to children, natural conditions common or ordinary objects such as walls, fences, and gates, simple tools and appliances, and conditions arising from the ordinary conduct of a business."

In Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369, 373, this was said relative to the attractive nuisance doctrine:

"So in these cases we have the question of how uncommon is the instrumentality; how unusually dangerous it is; how attractive is it; what probability is there of children coming in contact with it; whether the probability is localized so that harm can be avoided, or is there merely a high probability that at some time and in some place children will come in contact with it, with nothing to indicate when and where the contact will come; how feasible is it to avoid danger of harm; how great would be the burden of avoiding or lessening danger of harm and the

effect of imposing such duty. And one outstanding inquiry that is often given scant consideration by the judges is the apparent intelligence of the child, his intelligent consciousness of the circumstances, and that he had reached the age where he would reasonably be expected not to tamper because of his appreciation of danger or appreciation of his want of right to tamper, so that no duty to protect him could reasonably be imposed."

See also Shell Petroleum Corporation v. Beers, 185 Okl. 331, 91 P.2d 777, and cited cases.

The propensity of a child of Sharon's age to be attracted by a chair, stool or similar object in common usage upon which they can climb is well known as is the fact that on occasions they are injured in falling from such objects. This does not, in our opinion, either require or justify us in holding that the doctrine of attractive nuisance is applicable to such objects.

The record clearly shows that stools for fitting shoes are in common usage; that stools of the design of the stool in controversy were used by a number of defendant's stores and were also used by others who sold shoes at retail; that there is nothing unusual about the decorative features of the stool; that the stool was not so constructed as to be inherently dangerous; that the stool was not displayed or used in a negligent manner; that the likelihood of a child being injured while playing on the stool was remote. We are, therefore, of the opinion that the trial court erred in denying defendant's motion for an instructed verdict in its favor.

Reversed with directions to enter judgment for defendant.