Argued and submitted February 11, order set aside October 30, 1985, Duncan's reconsideration and Eugene School Dist.'s reconsideration denied January 17, both petitions for review allowed February 25, 1986 (300 Or 562)
See later issue Oregon Reports

Before the Superintendent of
Public Instruction for the
State of Oregon in the Matter
of the Teaching Certificate of
Janet Cooper.

COOPER,
*Respondent - Cross-Petitioner,*

*v.*

EUGENE SCHOOL DISTRICT NO. 4J,
*Petitioner - Cross-Respondent,*

*and*

DUNCAN,
*Cross-Respondent.*

(CA A31423)

708 P2d 1161

Margaret E. Rabin, Salem, argued the cause for cross-respondent Verne A. Duncan and petitioner - cross-respondent Eugene School District No. 4J. With her on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem, and Bruce E. Smith and Jacquelyn Romm, and Cass, Scott, Woods and Smith, Eugene.

Rohn M. Roberts, Eugene, argued the cause for respondent - cross-petitioner Janet Cooper. With him on the brief was Jack R. Roberts, and Adkins, Roberts & Roberts, Eugene.

Leslie M. Swanson, Jr., and Sharon A. Rudnick, Eugene, filed a brief *amicus curiae* for the American Civil Liberties Union.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This case requires us to review a final order of the Superintendent of Public Instruction in which he revoked the teaching certificate of Janet Cooper,[1] because she wore religious dress while teaching in a public school operated by Eugene School District No. 4J. The district petitioned for review of the superintendent's order, seeking to have it affirmed.[2] Cooper cross-petitioned, seeking reversal of the superintendent's order. The parties raise a number of issues concerning the statutory and constitutional validity of prohibiting a teacher from wearing religious dress while teaching. We do not reach those issues, because we hold that, even if the prohibition is proper, the sanction of revoking Cooper's teaching certificate is unconstitutional because it is greater than is necessary to enforce the prohibition. We therefore set aside the order. ORS 183.482(8)(a)(A).

ORS 342.650 provides:

"No teacher in any public school shall wear any religious dress while engaged in the performance of his duties as a teacher."

ORS 342.655 provides:

"Any teacher violating the provisions of ORS 342.650 *shall be suspended* from employment by the district school board. The board shall report its actions to the Superintendent of Public Instruction who *shall revoke* the teacher's teaching certificate." (Emphasis supplied.)

Cooper is a member of the Sikh religion. As an expression of her religion she chooses to wear white clothing and a white turban. That dress is traditional to the Sikhs, but it is not a religious obligation. On December 6, 1983, Cooper wore her Sikh dress while teaching a public school class of sixth- to eighth-grade special education students. She intended to

---

[1] Cooper has since legally changed her name to Karta Kaur Khalsa. The district's petition and her cross-petition use her former name, and she has not moved to amend the caption; we will therefore refer to her as "Cooper."

[2] ORS 183.480(1) allows "any party to an agency proceeding" to seek judicial review of a final order in a contested case. It does not require that the petitioning party attack the validity of the order.

continue wearing it from then on. She explained the significance of the dress to her students and encouraged them and the staff to talk with her if they had any questions.[3]

The school principal notified Cooper that wearing religious dress is prohibited by statute and is cause for suspension from teaching and for revocation of her teaching certificate. She directed Cooper not to wear religious dress while performing her duties as a teacher and informed her that, if she again wore religious dress to the classroom, she would face suspension. The next day, Cooper wore her Sikh attire to class. On December 8, the district superintendent suspended her from teaching for violating ORS 342.650. He notified the Superintendent of Public Instruction of his action. The state superintendent issued a proposed revocation of Cooper's teaching certificate and appointed a hearings officer who conducted a contested case hearing.

The hearings officer found that Cooper had violated ORS 342.650 and proposed that the state superintendent revoke her teaching certificate. The superintendent adopted the hearings officer's findings of fact and conclusions of law *in toto* and revoked the certificate. Cooper is now teaching in a private school in New Mexico. Since this petition was filed, the superintendent has reinstated her teaching certificate on condition that she not teach in Oregon while wearing religious dress. Because the reinstatement is conditioned upon compliance with ORS 342.650 this appeal is not moot.

---

[3] We state the facts, which we take from the parties' stipulation, in some detail to explain the circumstances of this case, although many of the details are unnecessary to our decision. When Cooper began wearing her Sikh dress she sent the following letter to the staff of the school in which she taught:

"There are some changes happening in my life * * *. I would like to share them with you so that you can be prepared in case of questions from students or parents.

"As some of you already know, I am a Sikh, a member of a religion originating in India. As part of my religious practice I will begin wearing my turban all of the time and often be dressed all in white. * * * I am very open to hear your concerns or to explain more fully what I am doing.

"* * * * *

"I have explained this to the kids that I have in class - they or others may have questions. If you are unable to answer them please encourage them to ask me."

Although this letter and Cooper's actions other than wearing Sikh dress might be significant in some contexts, in this case they are not.

■    The first issue is whether Cooper violated ORS 342.650. Cooper argues that the statutory terms "religious dress" and "while engaged in his duties as a teacher" are "delegative" terms under *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), and that the superintendent's failure to adopt rules interpreting those terms makes it impossible to hold that her actions violated the statute. In *Springfield,* the Supreme Court described three classes of statutory terms: precise terms, inexact terms and delegative terms. The terms in question in this case are clearly not precise in the way that "21 years of age, male, 30 days" and similar terms are. 290 Or at 223. On the other hand, they are not delegative in the sense that they express an incomplete policy choice which the agency must complete. 290 Or at 228. The legislature has determined its policy. There is nothing left for the superintendent to do other than to decide whether Cooper's challenged actions violate the statutory expression of the legislative policy. That is precisely what the Supreme Court meant by an inexact term: one in which the application of the term to particular facts is a function of effectuating the legislative policy which the inexact term represents. 290 Or at 224. The hearings officer in this case found that "[n]othing in the statutory scheme suggests that the legislature intended that before ORS 342.650 could be enforced, either a school district or the Superintendent would have to promulgate rules * * *." We agree and hold that "religious dress" and "while in the performance of * * * duties as a teacher" are inexact terms which the superintendent may apply without rule making.

■    In applying inexact terms to specific facts, the "task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts. The determination of the meaning of the statute is one of law, ultimately for the court." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 224. The apparent legislative policy behind ORS 342.650 is to preserve the school's religious neutrality. That policy would be violated if a teacher communicated the teacher's religious preference to students in a way which implied that the school supported the teacher's preference. We therefore construe the term "religious dress" to mean clothing that is associated with, and symbolic of, religion.[4] To be symbolic, the clothes must

---

[4] We need not decide in this case whether the statute also prohibits the wearing of jewelry or other ornaments which express a religious belief.

communicate the wearer's adherence to a particular religion. We construe "while in the performance of his duties as a teacher" to include only those duties which systematically bring the teacher, as a teacher, into contact with students. The facts establish that Cooper wore traditional Sikh attire in order to communicate her adherence to the Sikh religion, that she wore it while teaching her class and that students understood what her clothing communicated. We affirm the superintendent's conclusion that Cooper violated ORS 342.650. Given our construction of the statute, we reject Cooper's argument that ORS 342.650 is impermissibly vague.

We turn to the more difficult question of the constitutional validity of ORS 342.650 and 342.655. Both parties rely on the First Amendment—Cooper on the Free Exercise Clause, the superintendent on the Establishment Clause.[5] In most cases involving religion and government, the issue is *either* whether the government has shown such support for a religion that it can be held to have established it *or* whether it has placed impermissible burdens on an individual's free expression of religious belief. The two provisions are not often involved in the same case.

What is unusual about this case is that the two federal constitutional requirements come into direct conflict. Cooper has a federal constitutional right to exercise her religion, and that right includes the right to wear clothes expressive of her beliefs. The school district has a federal constitutional obligation not to lend its authority to the support of any religion, including Cooper's. *Walz v. Tax Commission,* 397 US 664, 669, 90 S Ct 1409, 25 L Ed 2d 697 (1970). The difficulties arise because Cooper, like every other public school teacher, has a dual role. She is both an individual entitled to express her individual beliefs and an agent of the state who represents its authority to her students. If, as a

---

[5] The First Amendment to the United States Constitution provides in part:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *."

These First Amendment guarantees apply to the states through the Fourteenth Amendment. *Everson v. Board of Education,* 330 US 1, 67 S Ct 504, 91 L Ed 711 (1947) (Establishment clause); *Cantwell v. Connecticut,* 310 US 296, 60 S Ct 900, 84 L Ed 1213 (1940) (Free Exercise clause).

result of her wearing religious dress while teaching, the school district appeared to support her religion, she caused it to violate the Establishment Clause. In order to end that violation, the district had to order her to change her attire and to remove her from the classroom if she refused. On the other hand, if it was clear that Cooper acted in her individual role and that the district took no position on her religion, any action by the district or the state to require her to change her dress or to impose any sanction on her for refusing would violate the Free Exercise Clause.

This is not a case, as the superintendent, the district, and *amicus* argue, of balancing a compelling secular interest against an incidental infringement of religious practice. *See United States v. Lee,* 455 US 252, 257-258, 102 S Ct 1051, 71 L Ed 2d 127 (1982) (payment of Social Security taxes); *Braunfeld v. Brown,* 366 US 599, 81 S Ct 1144, 6 L Ed 2d 563 (1961) (uniform application of Sunday closing laws); *Prince v. Massachusetts,* 321 US 158, 64 S Ct 438, 88 L Ed 645 (1944) (conviction of Jehovah's Witness under child labor laws). The only possible application of ORS 342.650 is to limit a teacher's free exercise rights.

■ We will assume, without deciding, that the Establishment Clause requires the district to prevent Cooper from teaching in religious dress. The fact that such acts may be prohibited does not establish what sanctions may constitutionally be imposed for violating the statute. In other words, we must still decide whether the requirement in ORS 342.655 providing that the superintendent must revoke Cooper's teaching certificate is constitutionally valid. What we review in this case is the order of revocation. If that sanction is improper, the order cannot stand. Cooper does not, in this proceeding, challenge the suspension by the district. We hold that the sanction of revocation is unconstitutionally severe and that the superintendent's order must be set aside.

■ The right to believe and to express that belief may be the most important guarantee of the Bill of Rights. For many believers, their religion shapes their understanding of the world, expresses their primary loyalties and provides the foundation for all their other relationships. It comes before their obligations to their country and before their duty to obey their country's laws. The First Amendment, in recognition of

those overriding loyalties, takes from the government the power to require compliance with some otherwise valid laws when compliance would violate a person's religious beliefs. *Wisconsin v. Yoder,* 406 US 205, 92 S Ct 1526, 32 L Ed 2d 15 (1972) (compulsory high school attendance); *Board of Education v. Barnette,* 319 US 624, 63 S Ct 1178, 87 L Ed 1628 (1943) (compulsory flag salute). Even when the First Amendment allows the government to regulate in an area of a person's beliefs, it places limits on the regulation. The government's power "must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut, supra* n 5, 310 US at 304.

■　　Cooper's adherence to the Sikh religion obviously plays an important role in her life—so important that she chose to wear characteristic Sikh attire while teaching despite the threat of losing her job and her teaching certificate. Assuming that her choice is outside the constitution's protections, it was nevertheless an expression of Cooper's religious beliefs. Imposing sanctions on her for making that choice restricts her religious freedom. If the sanction is more severe than necessary to preserve the state's religious neutrality, it is an excessive restriction of Cooper's rights and is therefore impermissible. A burden on religious observance is not valid if "the State may accomplish its purpose by means which do not impose such a burden [on religious expression]." *Braunfeld v. Brown, supra,* 366 US at 607. "Whatever might be said of [the State's] objectives they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights." *United States v. Jackson,* 390 US 570, 582, 88 S Ct 1209, 20 L Ed 2d 138 (1968).

The First Amendment protects the rights of religion, of speech, of the press and of assembly with the expectation that Americans will vigorously exercise those rights to their outer boundaries. In the process, some will inevitably exercise their rights so vigorously that they exceed the limits of constitutional protection. When they do so, they expose themselves to sanctions for violating laws which validly limit expression. Yet First Amendment considerations do not disappear even then. If the legal limits on expression are too great, or if the sanctions are too heavy, people will retreat from the questionable areas, thereby limiting freedom for all. For

this reason, the Supreme Court has restricted the government's authority to set the limits of permissible expression. No matter how valid the governmental purpose, that purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. *The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose." Shelton v. Tucker,* 364 US 479, 488, 81 S Ct 247, 5 L Ed 2d 231 (1960). (Emphasis supplied.) (Footnotes omitted.) "An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll v. Princess Anne,* 393 US 175, 183, 89 S Ct 347, 21 L Ed 2d 325 (1968).

■■■ In short, a government may impose substantive restrictions on First Amendment freedoms only if those restrictions are the least restrictive alternative available to achieve the legitimate governmental objective. An unnecessarily severe sanction may chill the exercise of First Amendment rights as effectively as an impermissibly broad restriction; indeed, a severe sanction may deter possible tests of the validity of the restriction because the price of losing will be too high. People will play it safe and limit their actions to what is unquestionably acceptable. The full expression of religious belief and the robust speech which the First Amendment contemplates cannot thrive in such a cautious atmosphere; indeed, the current limits of expression would be far narrower if there had not been people in the past who were willing to test the limits of their time. Any restriction on the free exercise of religion, whether in the form of a prohibition or a sanction, must be limited to what is necessary to achieve a legitimate governmental purpose.

■■■ We need not determine the precise extent to which the First Amendment limits the legislative choice of a sanction.[6] Revocation of a teaching certificate is so much greater a

---

[6] Deciding what kind and degree of sanction is necessary to achieve a particular purpose obviously requires considerable judgment and weighing of alternatives and involves important policy choices. The need to deter others, as well as to punish the particular violator, may play a legitimate role. These are considerations for the legislature. We must, nonetheless, review the legislative choice to ensure that it is consistent with First Amendment values and does not unnecessarily chill the exercise

sanction than is necessary to preserve the district's neutrality in religious matters that it is invalid under any conceivable standard. ORS 342.655 itself shows this to be the case, for it requires the school board to suspend the offending teacher from employment. After being suspended, the teacher will return to the classroom only in appropriate dress. Extending the sanction to *require* revocation of the right to teach in any dress serves no possible purpose beyond pure punishment greater than that the legislature has found sufficient for more serious misconduct.[7]

Because less restrictive alternatives which would achieve the governmental purpose exist, ORS 342.655 is unconstitutional to the extent that it requires the revocation of a teaching certificate for wearing religious dress while engaged in the performance of duties as a teacher. The superintendent did not purport to exercise any discretion in revoking Cooper's certificate. Because his actions were based solely on the requirements of ORS 342.655, he acted in excess of his constitutionally valid authority in doing so.[8]

---

of protected rights. In this case, where the government's only concern is to protect its neutrality in religious matters by controlling the actions of its employes, sanctions beyond removing the offending employe from the immediate arena of the violation, possibly followed by other discipline for wilful disobedience, may never be necessary. In different situations a wider variety of sanctions may be appropriate.

[7] The legislature has provided a range of possible sanctions for teacher misconduct, leaving to the Teacher Standards and Practices Commission the determination of which sanction is appropriate in a particular case. Aside from wearing religious dress, the only offense requiring revocation of the teaching certificate is conviction of certain sexual crimes or of an obscenity offense involving a minor. ORS 342.175(2). Conviction of other crimes, including drug-related crimes, gross unfitness and gross neglect of duty may subject a teacher to state-wide discipline, but the sanction may be as little as a public reprimand. ORS 342.175(1); ORS 342.177(3). When the legislature has provided discretion to allow a murderer or a grossly incompetent teacher to retain a teaching certificate with a public reprimand, we cannot say that automatic revocation for wearing religious dress is necessary to preserve the government's neutrality.

[8] *Amicus* argues that revocation is an improperly disproportionate penalty under Article I, section 16 of the Oregon constitution. Appellate decisions have applied that provision only to criminal penalties. *See State v. Turner*, 296 Or 451, 455-57, 676 P2d 873 (1984). Although we normally decide state constitutional issues before reaching the federal constitution, we do not consider this to be an appropriate case for deciding whether Article I, section 16 also applies to civil sanctions. The substantive rights involved in this case are federal, and the question of the propriety of the sanction is so closely tied to those substantive rights that the entire issue is best seen as one of federal law. Nor do we reach the issues Cooper raises under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*, or under the Oregon constitution's religion clauses. Or Const, Art I, §§ 2-5. Those issues are necessarily superseded by the federal constitutional question.