Argued and submitted April 22, affirmed June 26, reconsideration denied
September 25, petition for review allowed November 26, 1991 (312 Or 525)

## Karl L. OBERG,
*Respondent,*

*v.*

## HONDA MOTOR CO., LTD.,
Honda R&D Co., Ltd;
and American Honda Motor Co., Inc.,
*Appellants.*

(A8709-05897; CA A61587)

814 P2d 517

Jeffrey R. Brooke, Phoenix, Arizona, argued the cause for appellants. With him on the briefs were Paul G. Cereghini and Bowman and Brooke, Phoenix, Arizona, and James H. Gidley, Thomas W. Brown and Cosgrave, Vergeer & Kester, Portland.

William A. Gaylord, Portland, argued the cause for respondent. With him on the brief were Richard O. Thomas and Gaylord, Thomas & Eyerman, P.C., and Raymond F. Thomas and Royce, Swanson & Thomas, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants[1] appeal a judgment in favor of plaintiff in this product liability case. They make multiple assignments of error. We affirm.

At trial, plaintiff offered evidence that he was injured while riding a three-wheeled 1985 model Honda ATC 350X all-terrain vehicle (ATV) that was manufactured and sold by defendants.[2] While his two brothers watched, he attempted to climb a steep embankment with the ATV. His brothers testified that one of them stood in the middle of a nearby road to serve as traffic lookout and that plaintiff was moving at "walking speed" when he went up the embankment. Although plaintiff was an experienced ATV operator, his first attempt to make it up the embankment was unsuccessful and he rolled back down. He tried again, leaning farther forward, and climbed until the front wheel reached the top of the embankment. At that point, the front wheel came off the ground and the ATV overturned backwards. It tumbled to the base of the embankment and came to rest on top of plaintiff. He sustained multiple facial fractures, lacerations to one of his eyes and damage to his inner ear. As a result, he underwent extensive reconstructive plastic surgery. At trial, he testified that he continued to experience double vision, headaches, reduced short-term memory and cognitive limitations.

Plaintiff alleged, *inter alia,* that defendants had failed to perform reasonable safety tests on the ATV and that they were negligent in selling it, when they knew or should have known that it was a defective product. The case was tried to a jury, which awarded damages.[3]

Defendants moved for judgment notwithstanding the verdict, ORCP 63, and, in the alternative, for a new trial. ORCP 64. While those motions were pending, defendants

---

[1] Defendants are the parent company and manufacturer of Honda products, a subsidiary that designs and tests the products, and the United States distributor.

[2] As used in this opinion, the term "ATV" refers only to three-wheeled models.

[3] The jury awarded $919,390.39 as compensatory damages and $5,000,000 as punitive damages. It allocated 20% of the fault to plaintiff and 80% to defendants. The court reduced the compensatory damage award by 20% and entered a judgment against defendants for $5,735,512.31.

discovered two previously unknown eyewitnesses to plaintiff's accident. According to defendants, the witnesses, James Ball and his daughter, Jennifer, would testify that, while they were travelling in a truck on the road near the site of plaintiff's accident, they first saw him at least 50 to 100 yards in the distance, moving at "running" speed, that is, 10 to 20 miles per hour. They did not see plaintiff start up the embankment, nor the accident itself, because of foliage on both sides of the road. No one was standing in the road as a lookout; plaintiff was not leaning as far forward on the ATV as he contended at trial; and, after the accident, the ATV came to rest near, but not on top of, plaintiff.

Jennifer was seven years old at the time of the accident. She and James made their statements nearly four years after the accident. James later said in an affidavit that he had read plaintiff's trial testimony regarding the accident and could not disagree with any of it. Defendants filed a second motion for new trial on the basis of the new evidence. The trial court denied all of the motions.

■ Defendants first assign as error the trial court's allowing plaintiff to read into evidence excerpts from several internal staff memoranda and an Advanced Notice of Proposed Rulemaking of the Consumer Product Safety Commission (CPSC) regarding ATV's.[4] The memoranda were dated from early 1984 to October, 1985. Defendants received all of the CPSC documents before plaintiff's accident. The excerpts said that, between January, 1982, and April, 1985, there were as many as 100,000 reported ATV-associated injuries and

---

[4] CPSC is a federal agency that regulates that sale of consumer products in the United States. It monitors national injury trends through the National Electronic Injury Surveillance System (NEISS). NEISS gathers information from 65 hospital emergency rooms and projects national statistics of injuries associated with approximately 1000 different products.

In May, 1985, in response to increasing reports of ATV-related accidents, CPSC created a staff task force to explore regulatory options. Approximately one year later, the task force submitted its report to the Commission. It made no finding of defects nor any recommendation for a product recall, although it said that ATVs and snowmobiles are "equally hazardous in their respective environments and depending on how they are used." CPSC later sued the leading ATV manufacturers, which resulted in preliminary and final consent decrees. Under the decrees, the manufacturers did not admit any product defect, but agreed to expand their public education and safety programs to help alleviate the risks associated with their products.

over 150 ATV-associated deaths in the United States. According to CPSC staff, a large number of the ATV accidents involved rearward "flip-overs" that resulted in "entrapment and crushing injuries to the driver." Two of the excerpts reveal that the "flip-overs" likely were a result of the "relatively light" front end of the ATV's as well as the "deceptive impression of stability given by a tricycle-type vehicle[.]"

Defendants argue that the CPSC excerpts are inadmissible hearsay. Plaintiff argues that the excerpts are not hearsay, because they were not offered for the truth of the matter asserted, but only to show that defendants were on notice that its ATV's could overturn rearward. In reply, defendants assert that admission of the evidence for that purpose is a "ruse," because it permits the jury to hear what otherwise is inadmissible evidence.

Hearsay is "a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). In *Sheedy v. Stall,* 255 Or 594, 597, 468 P2d 529 (1970), the Supreme Court said:

> "Where the out-of-court statement has relevancy both as evidence that the statement was made and also as evidence of the fact asserted in the statement, the problem is more difficult. This does not render the statement inadmissible, but limits the use to which the statement can be put."

Because plaintiff did not offer the CPSC excerpts to prove that his ATV was defective, they are not hearsay. They are admissible for the limited purpose of showing defendants' knowledge of the purportedly harmful characteristics of its product. *See Reiger v. Toby Enterprises,* 45 Or App 679, 682, 609 P2d 402 (1980).

Defendants next argue that the CPSC excerpts are unfairly prejudicial, because they distort the subject and substance of the documents from which they were extracted. OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

No objection was made under OEC 403 expressly. Even if the objection was preserved, the court properly balanced the probative value of the evidence against its prejudicial effect. The evidence was probative regarding plaintiff's claim that defendants knew that their product was defective. Also, the trial court allowed defendants' expert witness to read additional portions of the CPSC documents into the record and add to them his interpretations and comments. Finally, the court twice instructed the jury that it was to consider the evidence only on the issue of notice.[5] Under the circumstances, the trial court did not abuse its discretion by admitting the evidence.

■ Defendants next argue that the CPSC excerpts should not have been admitted, because they violate the "substantial similarity" rule by referring to dissimilar accidents. That argument fails. Although the excerpts may have contained some evidence of dissimilar accidents, defendants

---

[5] The trial court instructed:

"Jurors, I am now going to permit plaintiff's counsel to read to you excerpts from some documents of the federal agency [CPSC]. The documents that I will allow plaintiff's counsel to read to you are not admitted for the purpose of establishing the truth of the statements contained in those documents. That means that you should not assume that the statements in those documents are true.

"These documents are admitted for the limited purpose of notice. Plaintiff has alleged that these documents gave defendants notice before the date of the [sic] Oberg's accident that the [ATV's] could overturn.

"I will not suggest to you that these documents constitute adequate notice. The adequacy of notice is an issue for you to decide. The statements contained in these documents, the ones that will be read to you, may or may not be true. But we are not going to resolve their truth in this courtroom. In other words, they are coming in for the limited purpose on the basis that plaintiff has alleged that Honda had notice, and this is the evidence that's submitted to you and you will make that ultimate determination."

After plaintiff read the CPSC excerpts into the record, the court instructed the jury:

"Jurors, again I want to review with you the limitation that the Court has placed on this information. First, I want to remind you that you should not assume that these statements are true. The plaintiff claims that the excerpts that the lawyer just read to you gave Honda notice before plaintiff's accident that [ATV's] could overturn, and I'm not suggesting to you that the excerpts just read to you constituted adequate notice. That will be an issue that you will have to decide.

"Now, jurors, before we move on with another aspect of trial, let's take a moment, give you the chance to ask me any questions if you don't understand my instruction. You are not to assume that those statements are true, but you can consider them for whatever weight you want to give them as to this question of notice."

did not seek to excise those portions from what was read to the jury, but instead objected to them in their entirety. Because the objections did not inform the trial court with particularity as to what evidence was objectionable, the court did not abuse its discretion. *Stanfill v. TAT (U.S.A.) Corp.*, 76 Or App 332, 337, 709 P2d 717 (1986), *rev den* 300 Or 562 (1986); *Meislahn v. Demorest*, 48 Or App 631, 617 P2d 322 (1980).

■    Defendants' second assignment of error challenges the jury's punitive damages award as unconstitutional and excessive. In particular, defendants assert that the punitive damages award violates their rights under Article I, section 16, of the Oregon Constitution[6] and the Fourteenth Amendment. We consider defendants' Oregon constitutional arguments first. *Cole v. Dept. of Rev.*, 294 Or 188, 190, 655 P2d 171 (1982).[7]

Article I, section 16, provides, in part:

"Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportional to the offense."

Defendants argue that, under section 16, a $5 million punitive damages award is either an excessive fine or a disproportional penalty.[8] No Oregon case has decided this issue. Article I, section 16, of the Oregon Constitution was modeled after the same section of the Indiana Constitution. *See* Carey, *The Oregon Constitution* 28 (1926). The Indiana Supreme Court, in recognition of the similarities between Article I, section 16,

---

[6] Defendants' briefs also refer to the Eighth Amendment and Article I, section 10, of the Oregon Constitution. We will not consider those references, because defendants do not argue that the Eighth Amendment is a basis for reversal and their assignment of error does not refer to section 10. ORAP 5.45(4). Their other constitutional arguments do not merit discussion.

[7] Plaintiff argues that this assignment of error should not be considered, because defendants did not challenge the constitutionality of ORS 30.925 in the trial court. Plaintiff's assertion that defendants did not make that challenge is incorrect.

[8] In *Cooper v. Eugene Sch. Dist.*, 76 Or App 146, 154 n 8, 708 P2d 1161, *rev'd on other grounds* 301 Or 358, 723 P2d 298 (1986), we said:

"Appellate decisions have applied [Article I, section 16] only to criminal penalties. *See State v. Turner*, 296 Or 451, 455-57, 676 P2d 873 (1984). Although we normally decide state constitutional issues before reaching the federal constitution, we do not consider this to be an appropriate case for deciding whether Article I, section 16 also applies to civil sanctions."

of the Indiana Constitution and the Eighth Amendment, has concluded that section 16 requires no more and no less than the Eighth Amendment. *Norris v. State,* 271 Ind 568, 394 NE 144 (1979).[9] The United States Supreme Court has held that the Eighth Amendment does not apply in civil actions between private parties. *See Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 US 257, 109 S Ct 2909, 106 L Ed 2d 219 (1989). We hold likewise regarding section 16.

■ Defendants argue that the award of punitive damages violates the Due Process Clause of the Fourteenth Amendment. In particular, they assert that ORS 30.925[10] gives the jury "standardless discretion to award punitive

---

[9] Article I, section 16, of the Indiana Constitution provides:

"Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. *All penalties shall be proportioned to the nature of the offense.*" (Emphasis supplied.)

The emphasized language was added during the 1850 constitutional convention. *See* Brown, *Journal of the Convention of the People of Indiana to Amend the Constitution* 66 (Indiana Historical Collections Reprint 1936). Before 1850, that section was virtually identical to the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[10] ORS 30.925 provides:

"(1) In a product liability civil action, punitive damages shall not be recoverable unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought has shown wanton disregard for the health, safety and welfare of others.

"(2) During the course of trial, evidence of the defendant's ability to pay shall not be admitted unless and until the party entitled to recover establishes a prima facie right to recover under subsection (1) of this section.

"(3) Punitive damages, if any, shall be determined and awarded based upon the following criteria:

"(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;

"(b) The degree of the defendant's awareness of that likelihood;

"(c) The profitability of the defendant's misconduct;

"(d) The duration of the misconduct and any concealment of it;

"(e) The attitude and conduct of the defendant upon discovery of the misconduct;

"(f) The financial condition of the defendant; and

"(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected."

damages," because it "contains no requirement that the award be proportional to plaintiff's injury, no specific guidelines for fixing the amount of the award, and no maximum" and allows the jury to consider their net worth. They also assert that, because Oregon courts lack the power to review jury verdicts for excessiveness under Article VII (amended), section 3, of the Oregon Constitution, *see Van Lom v. Schneiderman,* 187 Or 89, 99, 210 P2d 461 (1949), the Oregon system is *per se* unconstitutional. They rely on *Pacific Mut. Life Ins. Co. v. Haslip,* ___ US ___, 111 S Ct 1032, 113 L Ed 2d 1 (1991).

In *Haslip,* a group of Alabama insureds brought an action against a life insurance company and one of its agents, alleging that the agent had committed fraud when he continued to accept their premium payments, even though their insurance policies had been canceled. The jury returned a verdict that included an award of over $800,000 punitive damages. The verdict was upheld by the trial court after a post-trial hearing and by the Alabama Supreme Court. The United States Supreme Court granted certiorari to determine whether the Due Process Clause rendered the punitive damages award "constitutionally impermissible." ___ US at ___ (111 S Ct at 1043).

At the onset, the Court held that the common law method for assessing punitive damages is not *per se* unconstitutional.[11] ___ US at ___ (111 S Ct at 1043). However, it then said:

> "We need not, and indeed, we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. *We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.*" ___ US at ___ (111 S Ct at 1043). (Emphasis supplied.)

---

[11] "Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable." 111 S Ct at 1042.

In other words, "[a]s long as the [jury's] discretion is exercised within reasonable constraints, due process is satisfied." ___ US at ___ (111 S Ct at 1044).

With that in mind, the Court first scrutinized the trial court's jury instructions, which provided in part that, if the jury was "reasonably satisfied from the evidence" that defendants had perpetrated a fraud on plaintiffs, they could award punitive damages to deter defendants and others from engaging in similar wrongdoing in the future. ___ US at ___ n 1 (111 S Ct at 1037 n 1). The Court noted that, in accordance with Alabama law, any evidence of the insurance company's wealth had been excluded. It then said:

> "[T]he [trial court's] instructions gave the jury significant discretion in its determination of punitive damages. But that discretion was not unlimited. It was confined to deterrence and retribution, the state policy concerns sought to be advanced." ___ US at ___ (111 S Ct at 1044).

The Court also cited with approval those punitive damages award systems that impose a standard of "clear and convincing evidence" or "beyond a reasonable doubt." ___ US at ___ n 11 (111 S Ct at 1046 n 11).

The Court next concluded that the post-trial procedures adequately ensured meaningful and adequate review because, among other reasons, the courts have the authority under Alabama law to reduce an excessive award. The Court said:

> "By its review of punitive awards, the Alabama Supreme Court provides an additional check on the jury's or trial court's discretion. It first undertakes a comparative analysis. It then applies the detailed substantive standards it has developed for evaluating punitive awards. In particular, it makes its review to ensure that the award does 'not exceed an amount that will accomplish society's goals of punishment and deterrence.' This appellate review makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its reception.
>
> "* * * * *
>
> "The application of these standards, we conclude, imposes a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive

damages. The Alabama Supreme Court's post-verdict review ensures that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages. While punitive damages in Alabama may embrace such factors as the heinousness of the civil wrong, its effect upon the victim, the likelihood of its recurrence, and the extent of defendant's wrongful gain, the fact finder must be guided by more than the defendant's net worth. Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket.

"* * * The standards provide for a rational relationship in determining whether a particular award is greater than reasonably necessary to punish and deter. They surely are as specific as those adopted legislatively in Ohio Rev.Code Ann. § 2307.80(B) (Supp. 1989) and in Mont.Code Ann. § 27-1-221 (1989)." ___ US at ___ (111 S Ct at 1046).[12] (Citations omitted.)

On the basis of *Haslip,* we hold that the jury's discretion was exercised within reasonable constraints. The court's restrictive instructions adequately guided the jury during its consideration of defendants' liability for punitive damages.[13]

---

[12] The Ohio and Montana statutes are similar to Oregon's.

[13] The trial court instructed the jury in accord with ORS 30.925:

"If you have found that plaintiff is entitled to general damages, you must then consider whether to award punitive damages. Punitive damages may be awarded to the plaintiff in addition to general damages to punish wrongdoers and to discourage wanton misconduct.

"In order for plaintiff to recover punitive damages against the defendant, the plaintiff must prove by clear and convincing evidence that defendant has shown wanton disregard for the health, safety, and welfare of others.

"Clear and convincing evidence is evidence that enables you to find that the truth of the facts asserted is highly probable.

"Wanton disregard for the health, safety, and welfare of others is conduct amounting to a particular aggravated deliberate disregard of the rights of others.

"If you decide this issue against the defendant, you may award punitive damages, although you are not required to do so, because punitive damages are discretionary.

"In the exercise of that discretion you shall consider evidence, if any, of the following:

"First, the likelihood at the time of the sale that serious harm would arise from defendants' misconduct.

"Number two, the degree of the defendants' awareness of that likelihood.

"Number three, the duration of the misconduct.

"Number four, the attitude and conduct of the defendant upon notice of the

The jury was informed that its punitive damages award, if any, should be designed to "punish wrongdoers and to discourage wanton misconduct." Further, it was advised that it could award punitive damages only if plaintiff had proved by clear and convincing evidence that defendants had engaged in "a particular aggravated deliberate disregard of the rights of others." Last, it was instructed regarding five of the substantive factors outlined in ORS 30.925(3). Although one of the factors requires a consideration of defendants' financial situation, the jury cannot consider that factor unless it first determines that defendants are guilty of wanton misconduct. Evidence of defendants' financial situation bears only on the issue of whether, in the jury's discretion, the amount of punitive damages will deter similar future conduct. In context, the instruction on consideration of defendants' financial condition told the jury to arrive at an amount that would act as a deterrent.

Next, we examine Oregon's post-trial review procedures in the light of *Haslip*. We recognize that, unlike the Alabama post-trial and appellate review procedures, Article VII (amended), section 3, of the Oregon Constitution[14] prohibits

---

alleged condition of the vehicle.

"Number five, the financial condition of the defendant.

"And the amount of punitive damages may not exceed the sum of $5 million."

[14] Article VII (amended), section 3, provides:

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the supreme court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court. Provided, that nothing in this section shall be construed to authorize the supreme court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

trial and appellate courts from setting aside a verdict on the ground that it is excessive. *See Van Lom v. Schneiderman, supra*. However, the Oregon Constitution does allow appellate review of a punitive damages award to determine whether there is any evidence to support the verdict. *See, e.g., Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 239, 578 P2d 1225 (1978). Further, the factors considered by the jury under the Oregon scheme are similar to those considered by Alabama courts in their post-trial review and approved by the Court in *Pacific Mut. Life Ins. Co. v. Haslip, supra,* ___ US at ___, ___ (111 S Ct at 1044, 1045).[15] The post-trial review evaluates the admission of evidence pertaining to punitive damages and the jury instructions given on that issue. The combined effect of the restrictions on jury discretion mandated by ORS 30.925 and appellate review ensures that the factfinder be guided by more than a defendant's financial condition and that there be a rational relationship between the amount of the award and what is necessary for deterrence. The award of punitive damages in this case does not violate due process.

■ The only question that remains regarding the punitive damages award is whether there is any evidence to support the verdict. We conclude that there is, and we will not disturb it. *See* Or Const, Art VII (amended), § 3; *Friendship Auto Sales v. Bank of Willamette Valley,* 300 Or 522, 537, 716 P2d 715 (1986).

■ Finally, defendants assign error to the trial court's denial of their motion for a new trial on the basis of the discovery of new eyewitnesses to plaintiff's accident. The trial court found that "there was no lack of diligence by defendants in their efforts to locate witnesses before the trial." Nonetheless, it concluded that "[t]he newly discovered evidence probably would not have changed the result." *See Newbern v. Exley Produce Express,* 208 Or 622, 631, 303 P2d 231 (1956). In the light of the length of time between the accident and the Balls' statements, Jennifer's age at the time of the accident, the distance from which they observed plaintiff cross the road, the fact that neither of them actually saw the accident

---

[15] In *Haslip*, Justice O'Connor dissented in part, because she thought that Alabama *juries,* and not the state's judiciary, should apply those factors. ___ US at ___ (111 S Ct at 1065).

and the fact that James said that he did not disagree with plaintiff's testimony, the court did not abuse its discretion.

Affirmed.