## RUSSELL-LOCK SUPER-SERVICE, Inc., et al. v. VAUGHN.

No. 23816.   Jan. 29, 1935.

Lillard & Gibbons and Elwyn S. Gibson, for plaintiff in error.

Sanford Babcock, for defendant in error.

PER CURIAM. This case originated in the district court of Oklahoma county, Okla., by V. J. Vaughn on the sixth day of April, 1931, filing his petition against Russell Lock Super-Service, Inc., L. W. Lewis, and Lewis Saddler, defendants. A judgment was had in favor of the plaintiff, and the defendant Russell-Lock Super-Service, Inc., appeals as plaintiff in error, making V. J. Vaughn defendant in error. The parties in this opinion will be referred to as they appeared in the lower court, for convenience.

The facts involved in this case as set out in plaintiff's petition are as follows: On March 16, 1931, the plaintiff was the owner of a storage battery in his delivery truck, the delivery truck being parked in front of his place of business at 1237 East Twentieth street in Oklahoma City, Okla. Russell-Lock Super-Service, Inc., was a corporation engaged in the sale and servicing of automobile storage batteries. The defendant had sold to the Ritz Cleaning Company, previous to March 16th, a storage battery. The plaintiff, V. J. Vaughn, worked for the Ritz Cleaning Company at the time the defendant sold the battery to the Ritz Cleaning Company. Some time after the sale was made, the plaintiff opened up his own place of business at the place above stated. The Ritz Cleaning Company never, at any time, paid for the battery which was purchased.

The defendant Russell-Lock Super-Service, Inc., thought that the plaintiff had their battery in his car on the date of the difficulty. Mr. Russell, one of the owners and managers of the Russell-Lock Super-Service, Inc., instructed his servant, Lewis Saddler, and another servant to go out to the plaintiff's place of business and get pay for the battery sold to the Ritz Cleaning Company or bring the battery back to the defendant's place of business. Saddler and Kelly drove up to the plaintiff's place of business, and, as evidence shows, without making any request of the plaintiff to look at the battery and identify it, started to take the plaintiff's battery out of his car. The plaintiff remonstrated and pulled Saddler

out of plaintiff's car and a fight ensued; the evidence is conflicting as to the instruments used in the fight. The plaintiff was injured by Saddler—had a broken nose and other lacerations on the face. While Saddler and the plaintiff were fighting, Kelly took the battery out of plaintiff's car and placed it in the defendant's car and took the battery to the defendant, Russell-Lock Super-Service, Inc., garage.

Some two or three hours after this happened the Russell-Lock Super-Service, Inc., returned the battery to the plaintiff's place of business for the reason that they did not know whether it was their battery or not.

On these facts the plaintiff filed his petition asking for $6,000 compensatory damages, and $2,000 exemplary damages. The defendant filed its general denial, and in addition to the general denial filed by the defendant, they alleged that if the plaintiff was injured it was caused by his own negligence in negligently and carelessly bringing about an altercation and engaging in a fight without any provocation. This answer was unverified, and on these issues the case was submitted and tried to a jury on the 27th day of October, 1931, and a verdict was returned by the jury in favor of the plaintiff and against the Russell-Lock Super-Service, Inc., in the sum of $1,000. This was a general verdict and did not set out whether the verdict was for compensatory damages or for exemplary damages.

The defendant Russell-Lock Super-Service, Inc., appeals from said verdict and judgment, and in its brief argues three propositions why the verdict and judgment should be set aside by this court. The first proposition is as follows:

"The court erred in overruling the demurrer of this defendant to the evidence of the plaintiff and in refusing to give defendant's requested instruction No. 1, for a directed verdict for this defendant."

Second proposition:

"The court erred in giving the plaintiff's requested instruction No. 2, in words as follows: The jury are instructed that 'If they believe from the evidence that the defendants Lewis Kelly and one Saddler, while acting in the behalf of the defendant Russell-Lock Super Service, Inc., in an endeavor to get possession of a storage battery for a Ford car, willfully, wrongfully and unlawfully assaulted and beat the plaintiff as charged in the plaintiff's petition, provided you find that the plain-

tiff was not at fault as hereinafter stated to you, and that at the time plaintiff sustained damages, then the jury are instructed that they should find a verdict in favor of the plaintiff and assess his damage at such sum as they believed from the evidence he is reasonably entitled to, not exceeding the amount stated in the plaintiff's petition, and in this respect you are further charged that it is not necessary that any sum should have been named or mentioned in the evidence, the amount of damage in case of finding for the plaintiff. You are to ascertain, basing your findings upon the extent of the plaintiff's injury, if any such are shown by the evidence, both for injuries received at the time of said assault and any permanent injury ensuing therefrom, that the jury may believe from the evidence he has sustained. These are known as actual damages'."

Third proposition:

"The court erred in refusing to give the defendants' requested instruction No. 3, in words as follows: 'You are instructed that the plaintiff is not entitled to recover any punitive damages as against the defendant Russell-Lock Super-Service, Inc.' "

"The court erred in giving plaintiff's fourth requested instruction, in words as follows: 'You are further instructed that if you find from the evidence that there has been malice and misconduct on the part of the defendants, or that the defendants have acted in such gross disregard of the rights of the plaintiff as to amount to constructive malice, then, punitive damages may be assessed against the defendants, and you are instructed that if you believe from the evidence that the defendants herein willfully, wrongfully and maliciously, and without regard to the rights of the plaintiff, or acting in such gross disregard of his rights, as to amount to constructive malice, forcibly took the property of the plaintiff from his possession, against his will and without his consent, then you may assess punitive damages against the defendant, or if the jury believes from the evidence that the plaintiff herein was wantonly, wrongfully, and maliciously assaulted, and that such assault was wrongful in its nature and without regard to the rights of the plaintiff, then you may assess the plaintiff such punitive damages as under the circumstances you may think reasonable and just by way of punishment to the defendants, provided that in no case shall the amount allowed as punitive damages exceed the sum of $2,000 asked in the plaintiff's petition'."

In considering the defendant's first proposition, that is, that the court should have given an instructed verdict in favor of the defendant Russell-Lock Super-Service, Inc., the question arises as to whether there

was sufficient evidence before the court to warrant the court in submitting the issues involved in the case to the jury for their verdict. The evidence of the plaintiff showed that his Ford delivery truck was parked in front of his place of business on the day the difficulty complained of occurred, March 16, 1931; that shortly before Saddler and Kelly came to the plaintiff's place of business, the defendant Russell-Lock Super-Service, Inc., by its servant, called the plaintiff and ask him about the battery they were looking for. The plaintiff told the defendant that he thought he knew where the battery was and gave them the name of the party who had it. The rest of the conversation was not admitted in the trial, but in a few minutes the man who talked with the plaintiff from Russell-Lock Super-Service, Inc., which the evidence showed was Saddler, came with a man by the name of Kelly and parked their car just behind the plaintiff's car at plaintiff's place of business; the car in which they came to the plaintiff's place of business was a service truck with the Russell-Lock Super Service, Inc., sign on it, and one of the men had on a long coat which had "Russell-Lock Super-Service, Inc.," in letters somewhere on it. When Kelly and Saddler got out of their car they went directly to the plaintiff's truck, which was a panel-bodied delivery truck, Kelly going under the car and examining the battery and Saddler getting in the back end of the car, supposedly to take the battery out. When Saddler started to get into the car, the plaintiff caught him by the coat and pulled him out; when he did this someone struck the plaintiff, and in the fight which ensued the injuries complained of were inflicted on the plaintiff. The evidence also shows that Saddler told the plaintiff that Mr. Russell had sent them after the money or the battery.

The rule with reference to sustaining a demurrer to the evidence of the plaintiff is that if there is sufficient evidence standing alone to sustain the verdict to the evidence, the demurrer should be overruled, and considering the testimony of the plaintiff and the other witnesses for the plaintiff, any ordinary, reasonable person would conclude that Saddler and Kelly were the agents of the defendant Russell-Lock Super-Service, Inc., and that they were acting in the course of their employer's business, and the taking of the battery was the specific business assigned to Kelly and Saddler by the defendant, and that the assault complained of was one of the acts of the defendant, which was at that time necessary in order to procure possession of the battery, and that such act was committed in the course of the master's instructions.

The defendant Russell-Lock Super-Service, Inc., had, by its pleadings, admitted that Saddler and Kelly were its servants and employees, that is, it had not denied it and it was not denied in the evidence. Admitting that Saddler and Kelly were servants and employees of the defendant, and taking the evidence as above outlined, it would seem that the court was justified in refusing to sustain the defendant's demurrer to the plaintiff's evidence.

Section 220, Okla. Stats. 1931, provides:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment of authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

This court has held in a great many cases where the petition alleges agency, the defendant admits the agency unless the answer denying the agency is verified. St. John v. Ivers, 124 Okla. 215, 255 P. 706, and cases cited therein.

Where there is sufficient evidence given that the jury may draw a reasonable conclusion as to the rights of the parties, the court is warranted in overruling a demurrer to the evidence of the plaintiff, and on appeal the verdict will not be disturbed. Bower-Venus Grain Co. v. Smith, 84 Okla. 105, 204 P. 265; Smith v. Lumber Co., 101 Okla. 86, 223 P. 154; Burt Corporation v. Crutchfield, 153 Okla. 2, 6 P. (2d) 1055; Advance-Rumely Thresher Co. v. Alexander, 156 Okla. 150, 9 P. (2d) 934.

Taking the defendant's second proposition as argued in their brief, a complaint of the giving of instruction No. 2 requested by the plaintiff, which is quoted above, they argue that the instruction does not give the jury sufficient information upon which to base its verdict, that is, that it does not tell the jury that before they would be justified in returning a verdict against the defendant Russell-Lock Super-Service, Inc., they must find that Kelly and Saddler were acting within their instructions from Russell-Lock Super-Service, Inc., and in furtherance of the business or interest of the Russell-Lock Super-Service,

Inc. In reading from the instructions, we notice that the court said: "The jury are instructed that if they believe from the evidence that the defendants Lewis Kelly and one Saddler, **while acting in the behalf of the defendant Russell-Lock Super-Service, Inc.,** in an endeavor to get possession of a storage battery, willfully, wrongfully, and unlawfully beat the plaintiff as charged in the plaintiff's petition, provided you find the plaintiff was not in fault, * * *" we are at a loss to know what other language could have been used by the court to instruct the jury as to how to arrive at its verdict. If Russell-Lock Super-Service, Inc., instructed Saddler to go to plaintiff's place of business and get the storage battery or pay for it, and Saddler, in the carrying out of those instructions, was interfered with by the plaintiff in taking possession of the battery, and inflicted physical injury to the plaintiff, it seems that the court's words in the instruction, which reads: "Lewis Kelly and one Saddler, while acting in the behalf of the defendant Russell-Lock Super-Service, Inc.," are amply sufficient to tell the jury that if they find from the evidence that Saddler and Kelly were acting for the Russell-Lock Super-Service, Inc., in taking the battery out of plaintiff's car, and in order to take the battery they had to assault the plaintiff in such a manner as to prevent the plaintiff from interfering with the taking of the battery, the jury will be warranted in concluding at the time the battery was taken Saddler and Kelly were acting for the defendant Russell-Lock Super-Service, Inc., and that their acts were the acts of the defendant Russell-Lock Super-Service, Inc.

It seems that the question of whether the servants of Russell-Lock Super-Service, Inc., were acting in their line of duty at the time the assault was committed, was properly and fairly submitted to the jury in the instruction complained of. If Saddler and Kelly were acting in their line of duty at the time the assault was committed, then the defendant Russell-Lock Super-Service, Inc., would be liable for any damage committed by the acts of its servants, Saddler and Kelly.

In the case of Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. (2d) 1, which is a case very similar to the case under discussion, this court held in the eighth syllabus paragraph of that case:

" 'In general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse or emotion, which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' Mechem on Agency, sec. 1960."

It seems from the evidence in the case at bar that you could not picture a case of a servant doing an act which caused an injury that would be more in line with and more in the furtherance of the master's business than the act complained of by the plaintiff. The evidence shows that Saddler called the plaintiff and asked him about the battery in question; that in a few minutes Saddler came to the plaintiff's place of business and told the plaintiff that he had come after the money or the battery, and that he represented the defendant Russell-Lock Super-Service, Inc,; that he proceeded to take the battery which belonged to the plaintiff. The testimony of Mr. Russell on the part of the defendant showed that he sent Saddler out after the battery or the money, but told him not to make any trouble. In carrying out these instructions from Russell, Saddler, in order to take possession of the battery, which he had been ordered to do by Russell, owner of the company, found that it was necessary to subdue the plaintiff to such an extent that the plaintiff would not interfere with his taking the battery. We are unable to conceive of a case in which a servant could be more completely engaged in the carrying out of the master's instructions than Saddler was at the time he assaulted and injured the plaintiff, and if the jury believed that Saddler was engaged in carrying out the master's instructions, the instruction complained of by the defendant was not erroneous, because the instruction says "while acting in behalf of the defendant Russell-Lock, Super-Service, Inc." That is sufficiently broad to warrant the jury in finding that Saddler, at the time he inflicted the injury to the plaintiff complained of, was acting in behalf and under instructions from Russell-Lock Super-Service, Inc.

It seems that the evidence in the case at bar makes it plain that Saddler was acting in the line of his instructions from Russell-Lock Super-Service, Inc., more

closely than the servant was in the Ada-Konawa Case above referred to.

The third proposition argued by the defendant in its brief complains of the court giving the fourth instruction to the jury relative to punitive damages, supra. The defendant admits in its brief that:

"A corporation may be liable in exemplary damages for a tort committed by its agent or servant while engaged in the master's business, where the act is such as would subject the servant to exemplary damages if sued alone, and it is not necessary that the particular act or negligence be either authorized or ratified by the corporation."

It seems that this instruction fairly states the law upon which exemplary damages may be recovered, and if the jury found that the servants were engaged in the master's business, and that the act committed by the servant which is complained of was willfully, wrongfully or maliciously done or was wrongful in its nature and committed without regard to the plaintiff's rights, then the jury would be justified in finding a verdict for exemplary damages.

It seems to be the rule that if a servant, while acting in the scope of his authority, commits a tort so that the master is liable for actual damages therefor, the master will also be liable for punitive or exemplary damages to the same extent that the servant would have been if sued alone. Mayo Hotel Co. v. Danciger, 143 Okla. 196, 288 P. 309; Hunt-Murry Co. v. Gibson, 157 Okla. 112, 11 P. (2d) 123.

The defendant complains of the form of the verdict, and states that the verdict was a general one and did not set out the amount of exemplary damages and the amount of compensatory damages. It seems to us that if the defendant desired the damages determined by the jury to be separately stated in the verdict, it should have requested an instruction from the court asking the jury to determine the amount of damage, if any they found, separately, and so state in their verdict. The court is of the opinion that if the defendant fails to ask for this instruction when a general instruction is given on exemplary damages, he waives this question and a general verdict will not be disturbed because the damages are not separately stated in the verdict.

The defendant in its brief complains of the verdict as being excessive. The rule with reference to excessive verdict is that:

"In a suit for damages for personal injuries, before a verdict of the jury will be set aside as excessive, it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption." Bucktrot v. Partridge, 130 Okla. 122, 265 P. 768.

See, also, Emerson v. Pasker, 131 Okla. 13, 267 P. 480; Brown v. McNair, 125 Okla. 144, 256 P. 903.

The evidence showed that the storage battery in question in this case belonged to the plaintiff, Vaughn, and that the defendant, without regard to the rights of the plaintiff, sent its servants to plaintiff's place of business and in utter disregard of the rights of the plaintiff and without asking permission to examine the battery and see if it was the battery belonging to the defendant, forcibly took charge of the battery, and in taking charge of same disregarded every right which the law gives any person to protect his own property, and in order to carry out the instructions of their master it was necessary to inflict such injuries upon the plaintiff as would subdue him and put him in such a condition that further resistance could not be offered by the plaintiff. It seems to us that under those circumstances, and after the plaintiff had been subdued and made to admit to Sadler, as the evidence shows, that "he had had enough," the jury was very modest in returning a verdict for $1,000 against the defendant, and that the verdict is not excessive under the facts in this case. We are, therefore, of the opinion that the plaintiff was in his rights in defending his property against the unwarranted attack of the defendant; that defendants were not within their rights in taking possession of the plaintiff's property by force and violence; that the instructions of the court properly state the law to the jury, and that Sadler and Kelly were acting within the scope of their authority as agents of Russell-Lock Super-Service, Inc., defendant, at the time the assault was made, and that the assault was made in a furtherance of the master's business; that the master is liable for the acts of the servants, and that the verdict of the jury and the judgment of the court is not excessive, and that the judgment of the lower court should be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Charles H. Hudson, James S. Arnote, and Charles R. Freeman in the preparation of this opinion. These attor-

neys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hudson and approved by Mr. Arnote and Mr. Freeman, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.