**Glen H. RODEBUSH, By and Through Zelda RODEBUSH, as guardian ad litem and next friend, Appellee,**

v.

**OKLAHOMA NURSING HOMES, LTD., Appellant.**

No. 73340.

Supreme Court of Oklahoma.

Dec. 14, 1993.

---

Michael G. Smith and James R. Scrivner, Smith, Shew & Scrivner, Ada, for appellee.

Tom E. Mullen and Ann M. Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, and Jack Mattingly, Mattingly & Snow, Seminole, for appellant.

SUMMERS, Justice:

The jury concluded that an intoxicated nurse's aide slapped an Alzheimer's patient in the face while bathing him, and awarded punitive damages in the sum of $1.2 million against the nursing home. The nursing home appeals. We affirm.

The defendant's theories on appeal are these: (1) as employer it must not be held responsible for the intentional tort of its employee; (2) there was no clear and convincing evidence, as required by statute, showing conduct that would allow open-ended punitive damages; and (3) the Oklahoma punitive damages regimen violates the defendant's right to due process under the federal Constitution.

Glen Rodebush, a victim of Alzheimer's disease, was a resident of the New Horizon Nursing Home. His condition caused him to sometimes be combative. New Horizon is owned by Oklahoma Nursing Homes, Ltd. On the day in question Rodebush's wife arrived at the nursing home around noon, and found large welts and red marks on Rodebush's face. She demanded that his physician be called and Rodebush was examined. The doctor offered his opinion that the red marks had been caused by slaps of a human hand and that the marks were between six and twelve hours old.

Earlier that morning Rodebush had been awakened and strapped into a chair for use in a whirlpool bath. No injuries to his face were observable at that time. A male nurse's aide wheeled him into the whirlpool bathroom and gave him the scheduled bath at approximately 6:30 A.M. The two were alone together for about thirty minutes. After the bath, the nurse's aide reported a "rash" on Rodebush's face. The supervisor was not present when the "rash" was reported because she was late to work. When the

supervisor arrived, about thirty five minutes late, she confronted the aide and found him to smell of liquor. He told her he had "partied" all night and had only stopped the partying in time to come to work. The supervisor sent him home. He clocked out at approximately 7:30 a.m.

The nurse's aide had been hired by New Horizon without any background check, contrary to nursing home policy. A background check would have revealed the aide's prior conviction of a violent felony—assault and battery with intent to kill. He had also been convicted of escape and carrying a weapon after former conviction of a felony.

Furthermore, the records of the nursing home are void as to any training or instruction given to the aide prior to his assignment in the geriatrics ward. At trial, the head nurse testified that the aide had been given training, but that the documentation proving such training had been misplaced. She stated that she was positive he had been given training because all aides are given training before they start.

After the incident with Rodebush the aide was suspended for two days for working while intoxicated. Upon investigation by the Department of Human Services, the nursing home was found to be in violation of several regulations, and was reported for these viola-

tions. The violations included failure to properly train personnel, failure to follow in a timely manner the procedures for an intoxicated employee, failure to have a licensed nurse on duty at the time of the incident, and failure to notify the next of kin or the physician.

Zelda Rodebush, as guardian *ad litem* for her husband, brought suit against Oklahoma Nursing Homes, Ltd.[1] The suit alleged negligence in hiring practices and supervision of employees on the part of New Horizon, the intentional infliction of physical injury and emotional distress as to Mr. Rodebush and the intentional infliction of emotional distress as to Zelda Rodebush. At the conclusion of the defendant's case, the trial court dismissed the action for intentional infliction of emotional distress brought by Zelda, but refused to dismiss the claim of Glen Rodebush based on either negligence or wilful injury.

■ The trial court, outside the presence of the jury and pursuant to 23 O.S.Supp.1986 § 9, also made a finding that clear and convincing evidence showed that the conduct was wilful and wanton, and that the punitive damages in excess of the actual damages would be permitted. The jury returned a verdict in favor of the plaintiff Glen Rodebush on both theories of negligence and wilful misconduct[2], awarding him $50,000.00

---

1. Two other defendants were dismissed from the suit at plaintiffs' request.

2. The dissenting opinion in the Court of Appeals' opinion, and the dissent to this opinion, suggests that a flawed verdict form requires that the case be sent back for new trial. The verdict form stated that the jury found in favor of the plaintiff on both counts I and II, awarding $50,000.00 in actual damages. The verdict form stated that if the jury found in favor of the plaintiff on count II, the wilful misconduct, punitive damages could be awarded. (Count I was for simple negligence only) The jury filled in the blank line for damages with $1,200,000. The dissenting judge states that because punitive damages may be given only when actual damages have been awarded, and because it is unclear from the verdict form whether actual damages were awarded for count II, the case must be sent back for a new trial. This issue is not raised by the parties. Generally we will not consider issues not presented by the parties on appeal. *Wilson*

*v. Still,* 819 P.2d 714 (Okla.1991); *Jones v. Alpine Investments,* 764 P.2d 513 (Okla.1987); *Mothershed v. Mothershed,* 701 P.2d 405 (Okla.1985). However, we also note that there was no objection to the verdict during trial or at the close of evidence. A long discussion was had by the parties and the trial court with regard to the instructions, but no question or objection was ever raised as to the form of the verdict. Where a party fails to object to the form of the verdict before the jury is discharged, the objection is waived. *Downum v. Muskogee Stockyards & Livestock Auction, Inc.,* 565 P.2d 368, 369 (Okla. 1977) (plaintiff did not object to the form of the verdict in a case of comparative negligence, and such error was waived); *Montgomery Ward & Co. v. Oldham,* 391 P.2d 283, 285 (Okla.1964) (separate causes of action were submitted together and although the better practice is to submit the causes separately, it is not reversible error if there is no objection by the parties prior to the discharge of the jury).

in actual damages and $1,200,000.00 in punitive damages.

Oklahoma Nursing Homes appealed and the Court of Appeals affirmed. In its brief, Oklahoma Nursing Homes specifically waives any arguments with regard to the jury's finding of liability based on negligence. It only seeks reversal of the finding that the defendant is liable for the intentional tort of its employee, and the subsequent award of punitive damages. We granted certiorari.

## EMPLOYER'S RESPONSIBILITY FOR THE INTENTIONAL TORTS OF HIS EMPLOYEE

The nursing home asserts that the trial court erred in holding that the nurse's aide was acting within his scope of employment. It claims that the aide's action of slapping Rodebush was against the nursing home's policy and had not been suggested as a method of blocking the combativeness of an Alzheimer's patient. On the other hand, plaintiff asserts that the aide was acting to further the business of the employer, and was performing a task assigned to him by the employer. The incident took place while the aide was bathing Rodebush.

 As a general rule, it is not within the scope of an employee's employment to commit an assault upon a third person. *Hill v. McQueen,* 204 Okl. 394, 230 P.2d 483, 485 (1951); *see also Tulsa General Drivers, Warehouseman and Helpers Union v. Conley,* 288 P.2d 750, 753 (Okla.1955); Cooley on Torts, 4th Ed. §§ 392, 393 (1932). However, this general rule does not apply when the act is one which is "fairly and naturally incident to the business", and is done "while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business." *Russell–Locke Super–Service Inc. v. Vaughn,* 170 Okl. 377, 40 P.2d 1090, 1094 (1935); *See Ada–Konawa Bridge Co. v. Car-*

*go,* 163 Okl. 122, 21 P.2d 1, 7 (1933). An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer. *Id.; Brayton v. Carter,* 196 Okl. 125, 163 P.2d 960, 962 (1945) (automobile accident held to be within scope of employment even though the accident occurred on a route that was twenty-eight miles out of the way); *Corn v. City of Sapulpa,* 188 Okl. 418, 110 P.2d 290, 291 (1941) (the petition properly withstood a demurrer based on the fact that the employee could have been acting within the scope of his employment even though he made an illegal u-turn while assigned to a task for his employer). In such an instance, an employer can be held liable even if the employee acts beyond the given authority. *Patsy Oil & Gas Co. v. Odom,* 186 Okl. 116, 96 P.2d 302 (1939) (employer held responsible for the employee's taking of dynamite caps to an oil and gas well even though employer had not authorized the use of dynamite on the rig). It is the burden of the plaintiff to show that the employee was acting within the scope of his employment. *Oklahoma Railway Co. v. Sandford,* 258 P.2d 604, 607 (Okla.1953).

In *Mistletoe Express Serv. v. Culp,* 353 P.2d 9 (Okla.1959), this Court held an assault on customer by a truck driver to be within the scope of employment. The truck driver, a man of violent tendencies, was sent to deliver a television tube to a customer. The customer refused the tube, claiming that it had been damaged. The driver returned it to the employer. The employer declined to pay for the damage and directed that the tube be re-delivered to the customer. During the course of this second attempt to deliver the item, a fight ensued and the customer was injured. Looking to *Hill v. McQueen,* this Court stated that the rule of "scope of employment" must be considered on an individual basis. *Id.* at 15. We observed that in order for an employer to be responsible for the tortious acts of its employee, it must be shown that the act giving rise to the complaint "was done for the pur-

pose of doing the work assigned...." *Id.* at 16. We concluded that under the facts, the driver was carrying out a duty assigned to him and the assault arose out of the performance of this duty.[3]

Similarly, in *Russell–Locke,* we held that an employer could be held liable for the damages caused by an assault by an employee. There, the employer sold storage batteries. After failing to receive payment from a customer, the employer sent an employee to repossess the battery. A fight arose when the employee attempted to repossess the battery. Holding that the assault was within the scope of employment, we stated this was a prime example of the employee carrying out the duties assigned to him. *Id.* 40 P.2d at 1094.

■ In the present case the nurse's aide was assigned the duty of bathing residents. It was also a known fact that Alzheimer patients may be combative. The nursing home was in the business of taking care of Alzheimer patients. In this particular case, Rodebush was known to be particularly combative when being bathed. The nurse's aide had not deviated from his assigned duties, and was carrying out an assigned task when the slapping occurred. Although the testimony was that slapping a resident was not to be tolerated, there was no documentation as to any training received by the aide in which he was told of this policy. The nursing home was cited by D.H.S. as violating the policy requiring training of personnel. The evidence supports a determination that the acts were within the scope of employment.

## THE PUNITIVE DAMAGES STATUTE

New Horizon challenges the award of punitive damages for two reasons. Its first argument requires our review of legislation which imposed a new procedure for the consideration of punitive damages. Title 23 O.S.1991 § 9, the text of which was in effect at time of trial, provides:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, *in an amount not exceeding the amount of actual damages awarded.* Provided, however, *if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another,* oppression, fraud or malice, actual or presumed, *then the jury my give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.*[4] (emphasis added)

■ We have not had the opportunity to review this amendment to Section 9. This version of the statute places a cap on the amount of punitive damages which may be awarded. Punitive damages are limited to the amount of actual damages unless the trial court makes a preliminary determination that the cap may be lifted. To lift the cap, there must be a preliminary finding by the judge that the defendant has acted with actual or presumed malice, wanton or reckless

---

**3.** *See also Shrier v. Morrison,* 357 P.2d 196 (Okla. 1960) (employee's act of overcharging customers fell within the realm of acts performed incident to assigned tasks and employer could be held responsible for the acts); *Roring v. Hoggard,* 326 P.2d 812 (Okla.1958) (employee's act of operating a bulldozer when a child was injured by the bulldozer was within the scope of employment even though the employee was simply on his way to work).

**4.** Prior to this amended legislation which was enacted in 1986, the relevant statute did not have a "cap" on punitive damages. The legislation, 23 O.S.1981 § 9, required only that it be shown that the defendant was guilty of "oppression, fraud or malice, actual or presumed." It did not require an initial determination by the trial court of whether there was clear an convincing evidence to warrant the imposition of punitive damages.

disregard of the rights of another, fraud, or oppression. *This finding must be supported by clear and convincing evidence.* Only if this finding is made by the trial court can the cap on punitive damages be lifted, and the jury be permitted to consider the question of punitive damages in excess of the amount of actual damages. However, if the trial court does not find that at least one of the enumerated grounds was shown by clear and convincing evidence, the cap remains in place and the jury may award punitive damages only up to the amount of actual damages.

The Tenth Circuit interpreted the amended statute in *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1382 (10th Cir.1989). The defendant in *Marshall* asserted that there was not sufficient evidence to meet the statutorily-imposed "clear and convincing evidence" standard, and that this standard applied not only to the judge's preliminary determination but also to the burden of proof required to be applied by the jury. The Tenth Circuit declined to interpret the statute that way, stating that the plain reading of the statute required only a standard of "clear and convincing evidence" during the preliminary determination by the judge. This initial determination is a question of law. *Id.* at 1384. However, once this determination is made, the case then proceeds to the jury to apply the "preponderance of the evidence" standard as in other civil actions of this nature.[5]

On appeal the nursing home contests the trial court's preliminary finding that there was clear and convincing evidence to support the award of punitive damages. This threshold finding requires analysis of the evidence to determine whether there is clear and convincing evidence that the defendant acted with wanton or reckless disregard for the rights of the plaintiff, oppression, fraud, or actual or presumed malice. *See* 23 O.S.1991 § 9. We agree with the Tenth Circuit that this initial determination is a question of law for the trial court. *See also Jackson v. Pool*

*Mortgage Co.,* 868 F.2d 1178, 1182 (10th Cir. 1989) (construing Oklahoma law). The statute itself makes clear that this determination is one to be made by the judge as the decider of law.

We must first look to the statute to determine exactly what must be proven by clear and convincing evidence to lift the punitive damage cap. The statute provides that there must be clear and convincing evidence of the wanton or reckless nature of the defendant's actions. Nowhere in the statute does it indicate that all or even some of the elements of the underlying cause of action must meet the "clear and convincing" standard.

▮▮▮ A plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action. *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636, 640 (Utah 1980); *Gould v. Starr,* 558 S.W.2d 755, 770 (Mo.App.1977), *cert. denied* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978); *Cook v. Atlantic Coast Line R. Co.,* 183 S.C. 279, 190 S.E. 923, 924 (1937). The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages. *Eckels v. Traverse,* 362 P.2d 680, 683 (Okla.1961). *Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.,* 48 Cal.2d 71, 307 P.2d 626, 629 (1957).

As the statute expressly states, only specific types of behavior will permit the award of punitive damages. While the prayer for punitive damages is dependent on the underlying claim, the elements of proof are different. The statute requires proof of actual or presumed malice, oppression, fraud, or wanton or reckless disregard for the another's rights. If the plaintiff seeks punitive damages in excess of actual damages, at least one of these enumerated types of behavior must be shown with clear and convincing evidence.

▮▮▮ While the proof for punitive damages will probably overlap with that of the

**5.** *See Young v. First State Bank,* 628 P.2d 707, 711 (Okla.1981); *Pennsylvania Glass Sand Corp. v. Ozment,* 434 P.2d 893 (Okla.1967); *Peyton v.* *McCaslin,* 417 P.2d 316, 321 (Okla.1966); *General Exchange Ins. Corp. v. Edwards,* 181 Okl. 288, 73 P.2d 1145 (1937).

underlying cause of action, the plaintiff need not prove all elements of the underlying cause of action by clear and convincing evidence.[6] Rather, in remaining consistent with our prior case law which requires the "preponderance of the evidence" in most tort claims[7], we interpret the clear language of the statute to mean that only those specific types of conduct which would support an award of punitive damages must be shown by clear and convincing evidence.

■ Here, the trial judge specifically found that clear and convincing evidence showed that "an employee of the Defendant, while acting in the course of his employment, did inflict the injury upon the Plaintiff Mr. Rodebush, in the manner that events [sic— evinces?] a wanton or reckless disregard for his rights." The trial judge detailed his reasoning by pointing out that although the evidence was circumstantial, the most likely cause of the whelping of Glen Rodebush's face was severe slapping. He recounted the testimony of the doctor called to examine the marks, and the doctor's opinion that the injury was caused by a human hand. He also noted the testimony of nursing home personnel that while Rodebush was at times combative, he had never been known to inflict pain upon himself. The trial court concluded that plaintiff had met his burden of showing, by clear and convincing evidence, conduct on the part of the employee properly described as reckless and wanton. Thus, the statutory cap on punitive damages was lifted.[8]

In reviewing the issue of whether there was clear and convincing evidence of the wanton and reckless conduct of the nursing home's employee, we find no fault with the trial court's ruling. In addition to those facts stated by the trial judge in support of his ruling, we also note that the evidence showed that no other patient could have inflicted the injury, and that just prior to the bath, another nursing home employee saw Glen Rodebush and testified there were no marks on his face. There was also some testimony that the nursing supervisor on duty was told by the administrator not to call Mrs. Rodebush to inform her of the injury, in violation of nursing home policy.

The nursing home argues that there were no eyewitnesses, that Mr. Rodebush did not (could not) testify, and that the trial court's finding could only be made on speculation, rather than by clear and convincing evidence. Our response is that lack of eyewitness testimony is no barrier to meeting the "clear and convincing" test; indeed the case books are replete with instances of defendants standing convicted of *crimes,* with the stricter "beyond a reasonable doubt" test, where the only evidence was circumstantial. *See, e.g. Cavazos v. State,* 779 P.2d 987, 989 (Okla.Crim. App.1989) (defendant convicted of first degree murder even though evidence was circumstantial); *Johnson v. State,* 764 P.2d 530, 532 (Okla.Crim.App.1988) (defendant convicted of drug charge based on solely circumstantial evidence of possession); *Rawlings v.*

---

**6.** In *In re Aubrey,* 111 B.R. 268, 275 (9th.Cir.BAP 1990), the court reviewed a punitive damage award and stated that "oppression" had been shown by clear and convincing evidence as required by California statute. Other states have also enacted legislation requiring clear and convincing evidence of the conduct supporting punitive damages. *See* Mont.Code Ann. § 27–1–211 (1991); Nev.Rev.Stat. § 42.005 (1991); Utah Code Ann. § 78–18–1 (1991).

**7.** We realize that some tort claims, such as fraud, require a higher standard of proof.

**8.** We note that punitive damages may be assessed against a corporate employer for the acts of its employees if the employee is acting within the scope of his or her employment. *Russell–Locke,* 40 P.2d at 1094; *Holmes v. Chadwell,* 169

Okl. 191, 36 P.2d 499, 500 (1934) (employer may be liable for punitive damages if the employee was acting within the scope of his employment even if there is no showing of ratification of the act by the employer); *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668–69 (Tex.1990) (employer was liable for punitive damages even though the act resulting in liability was not a "management decision," but resulting from a non-managerial task); *Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850, 858–59 (Iowa 1973) (to recover punitive damages from a corporate employer, the employee must have been acting within the scope of his or her employment); *Binder v. Gen. Motors Acceptance Corp.,* 222 N.C. 512, 23 S.E.2d 894, 896 (1943) (employer can be responsible for punitive damages if the employee acted wantonly in the course of employment).

*State,* 740 P.2d 153, 159 (Okla.Crim.App. 1987) (defendant convicted of first degree murder even though no body had been found).

Additionally, the trial court doubtless took note, as do we, that the defendant declined to call the nurses' aide as a witness to rebut plaintiffs' circumstantial case, if in fact the plaintiffs' theory was not what happened. The nursing home had listed the aide as its witness in the pretrial order, and offered no explanation as to why he was not called. It is not improper for a trier of fact to take such a failure into account, particularly where one party relies on circumstantial evidence and the other fails to call the witness who could prove the circumstances otherwise. *Ft. Smith & W.R. Co. v. Collins,* 26 Okl. 82, 108 P. 550 (1910). For these reasons, we hold that the initial inquiry as to whether the conduct of the defendant through its employee was wanton and reckless was supported by clear and convincing, albeit circumstantial, evidence. The cap was properly lifted for consideration by the jury.

## THE CONSTITUTIONALITY QUESTION

The next contention by the nursing home is that the punitive damage award is unconstitutional.[9] More specifically, it asserts that the award of punitive damages was based on a vague and standardless procedure which is in violation of its due process rights. The nursing home also claims that by requiring only a preponderance of the evidence as the standard for the jury's determination, it was deprived of property without due process.

In *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court addressed these Due Process challenges to the award of punitive damages under a statute in Alabama.[10] *Haslip* addressed that question left open in *Browning–Ferris Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989): "[W]hether due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit" must "await another day."

*Browning–Ferris* held that the Excessive Fines Clause of the Eighth Amendment did not apply to a punitive damage award in a civil case, and that the federal common law did not provide a basis for disturbing the punitive damage award. The Court also held that the question of due process under the Fourteenth Amendment had not been presented to the courts below and would not be addressed.

*Haslip* was directly confronted with the issue of due process under the Fourteenth Amendment. The Court began its discussion by realizing the long tradition of punitive damages in our law. There has always been left to juries the discretion to set an amount of punitive damages consistent with the gravity of the wrong and the need to deter similar wrongful conduct. *Id.* While the discre-

---

9. Oklahoma Nursing Home, Ltd. asserts that *all* punitive damage awards in Oklahoma are unconstitutional. *TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) held to the contrary. There, the defendant asserted that punitive damages which were 526 times the amount of actual damages were so excessive as to violate the Fourteenth Amendment's Due Process Clause. The United States Supreme Court disagreed, stating that no bright line test could be used to make this determination. Instead, the focus should be on whether the award was "reasonable." —— U.S. at ——, 113 S.Ct. at 2720. Reasonableness of the award depends on factors such as potential harm of the conduct. The award need not be based solely on the relationship between compensatory damages and actual damages.

10. Incidentally, *Haslip* also addressed the question of whether the employee's actions were within his scope of employment and whether the employer could be held liable under the doctrine of respondeat superior. The Court answered both in the affirmative. The employee committed a fraud on customers by promising insurance coverage which was not in fact obtained. The insurance company, the employer, urged that it violated the Fourteenth Amendment to impose liability for punitive damages on the basis of respondeat superior. The Court disagreed, stating that the imposition of such liability by the state furthered the state's interest in minimizing fraud.

tion of the jury has been criticized by some, "the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice." *Id. quoting Missouri Pacific R. Co. v. Humes,* 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463 (1885).[11]

The Court then turned to the issue of "unlimited jury discretion" in the fixing of punitive damages.

> We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus.

It continued by holding that the punitive damages in that case were not violative of Fourteenth Amendment Due Process because although the jury was given significant discretion, the instructions limited the damages to those which would deter the unwanted conduct as well as serve the purpose of retribution. The instructions enlightened the jury as to the reason for punitive damages and the kind of conduct which could warrant the imposition of such damages. The Court concluded that the award was permissible. "As long as the discretion is exercised within reasonable constraints, due process is satisfied." *Id.* 499 U.S. at 20, 111 S.Ct. at 1044.

The high court next noted that in Alabama there were post-trial procedures to scrutinize the punitive damage awards. *Id.* A trial court was to state into the record the reason for interfering with a jury verdict or refusing to do so, on grounds of excessiveness. The trial court was permitted to consider the conduct of the defendant when reviewing the award. The Alabama Supreme Court, in reviewing the award, used not only a compara-

tive analysis, but also reviewed it to insure that the award did "not exceed an amount that would accomplish society's goals of punishment and deterrence." *Id. quoting Green Oil Co. v. Hornsby,* 539 So.2d 218, 222 (Ala. 1989). Review of the award also involved consideration of factors such as the relationship between the punitive damages award and the harm likely, the degree of reprehensibility of the conduct, duration of the conduct, the defendant's awareness, frequency of the conduct in the past, imposition of other sanctions and the financial condition of the defendant.

■ With this rationale in mind, we turn to the punitive damage award at hand. First, we note that our statute required a preliminary determination before the question could even be considered by the jury. The judge is required to find, by clear and convincing evidence, that the defendant committed conduct which fell within one of the enumerated categories. Such a finding by the judge must be clearly stated into the record. Second, unless this determination is made on the record, the jury's discretion is statutorily limited to awarding punitive damages only up to that amount awarded for actual damages. Next, following the guidance of *Haslip,* we look to the instructions given to the jury. Here, the trial court instructed that punitive damages were only to be given if the defendant's conduct showed wanton or reckless disregard for the rights of the plaintiff, malice, gross negligence or evil intent. The instruction stated that punitive damages were not compensation to the plaintiff, but were punishment to the defendant. It also made clear that the damages were not required, but only permitted. The instructions then went on to define wanton conduct as actions which show a deliberate or actual intention to injure the plaintiff, or which show an utter disregard or indifference for his rights. Malice was defined as ill will or

---

11. The tradition of punitive damages was emphasized by the numerous Supreme Court case law which has spoken to their wisdom. *See, e.g., Minneapolis & St. Louis R. Co., v. Beckwith,* 129 U.S. 26, 9 S.Ct. 207, 32 L.Ed. 585 (1889); *Standard Oil Co. v. Missouri,* 224 U.S. 270, 32 S.Ct. 406, 56 L.Ed. 760 (1912); *Louis Pizitz Dry Goods Co. v. Yeldell,* 274 U.S. 112, 47 S.Ct. 509, 71 L.Ed. 952 (1927); *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

hatred or a wanton or oppressive manner and conscious disregard for the rights of the plaintiff. The jury was also instructed that it could consider the wealth of the defendant.

These instructions, which are supported by Oklahoma case law, do not permit unfettered discretion by the jury. They explain the purpose behind the award of punitive damages, as did the Alabama jury instructions. They specify conduct for which the damages may be given, as did the Alabama instructions. They make clear that the award of such damages are not required by law, but are permitted by way of punishment if the jury determines that certain criteria are met. In this way they are similar to the Alabama instructions. The jury is also instructed that this must be shown by a preponderance of the evidence, and this term is explained. Hence, the jury's discretion is again limited by the burden of proof. The jury was also instructed that the defendant's wealth is a consideration when deciding the amount of punitive damages. Thus, the instructions clearly did not leave the jury unbridled to award punitive damages without guidance.

In Oklahoma, as in Alabama, post-trial procedures are available for review of the awards. Here, the nursing home filed a motion asking for judgment notwithstanding the verdict, a new trial and remittitur. The trial court denied these requests. Although New horizons was not given the relief requested in this case, the fact that they are in place and stand as a check on the jury's discretion is important to note.

Finally we look to the appellate procedures available to stand as a guard against arbitrary and unreasonable punitive damage awards. As we stated earlier, the preliminary determination by the trial court necessary to lift the cap on punitive damages is a question of law, reviewable by this Court, which reviews the record to see if the plaintiff met its burden of showing by clear and convincing that the defendant acted in a manner warranting imposition of punishment. In this case, the decision of the trial judge was detailed. We reviewed his statement, as well as the record, and found that his decision was supported by clear and convincing evidence. As in *Haslip*, our appellate review of this question does not just pay lip service to the trial judge's ruling, but is clearly effective to impose a restriction on the imposition of punitive damages.

This Court has on many occasions reviewed the amount of punitive damages awarded to determine whether the amount is reasonably related to the conduct of the defendant. The award must bear some relation to the cause and extent of the injuries. *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1115 (Okla.1991); *Hobbs v. Watkins*, 481 P.2d 746, 753 (Okla.1971). *See also Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 910 (Okla.1982). We have also not hesitated to reduce the punitive award if the award is excessive as a result of the "passion, prejudice, or improper sympathy" of the jury. *Id.; Chandler v. Denton*, 741 P.2d 855, 867–68 (Okla.1987); *Basden v. Mills*, 472 P.2d 889, 896 (Okla.1970) [12]. In proper cases we have, upon request, ordered remittitur of punitive damages as a condition of affirmance. *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1115 (Okla.1991); *Chandler v. Denton*, 741 P.2d 855, 868 (Okla.1987); *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 910 (Okla.1982). We have also held that the financial condition of the defendant is a relevant consideration. *Timmons*, 653 P.2d at 919.

**12.** See also *Moore v. Subaru of America*, 891 F.2d 1445 (10th Cir.1989) (construing Oklahoma law to permit the award of punitive damages when the defendant showed conduct which reflected a reckless disregard for public safety); *Silkwood v. Kerr–McGee Corp.*, 769 F.2d 1451 (10th Cir. 1985), *cert. denied* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1985) (construing Oklahoma law on punitive damages as permitting consideration of the defendant's state of mind with regard to the safety of its employees); *Spaeth v. Union Oil Co.*, 762 F.2d 865 (10th Cir.1985) *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986) (Construing Oklahoma law to require a relation between the award of punitives and the injuries inflicted); *Misco Leasing, Inc. v. Keller*, 490 F.2d 545 (10th Cir.1974) (construing Oklahoma law to require that the punitive damage award be reasonable and related to the injury inflicted).

Based on these restrictions, we hold that Oklahoma's law regarding the award of punitive damages does not violate the Due Process Clause of the Fourteenth Amendment.[13] As in *Haslip*, the jury is not given unfettered discretion in awarding punitive damages. Rather, like *Haslip*, the combination of statutory law, jury instructions, post-trial procedures and appellate review provide adequate safeguards against the jury's unbridled exercise of discretion in arriving at an award of punitive damages.

■ The jury's award of punitive damages here, though large, can hardly be described as unbridled. Its amount coincides with the evidence of the lowest of the previous years' net earnings distributed to the partners in the defendant nursing home enterprise. In fact the defendant expressly argued in its brief that although the punitive award should be reduced at least to the amount of actual damages as per the Section 9 cap, that it had not briefed, and did not request, a remittitur for the reason that the punitive damages award was imbalanced or excessive. (Reply brief P. 6) Nor did it argue that the verdict was actuated by passion, prejudice, or improper sympathy. The nursing home thus does not seek remittitur.

## CONCLUSION

There is no contention on appeal that there was error in awarding actual damages based on the negligence theory. As to that part of the claim based on the wilful and wanton striking of the plaintiff, the evidence supports a finding that the nurses' aide did so within the scope of his employment. The evidence is clear and convincing, though circumstantial, that it was done by the aide with wanton or reckless disregard for the rights of the plaintiff, thus justifying the lifting of the punitive damages cap. We also find that the jury's discretion in awarding punitive damages was not unfettered, but was restricted by statutory guidelines, post-trial procedures and appellate review. The judgment of the District Court as based on the jury's verdict is affirmed.

LAVENDER, V.C.J., and HARGRAVE, OPALA, ALMA WILSON, KAUGER and WATT, JJ., concur.

HODGES, C.J., concurs in result.

SIMMS, J., dissents and files opinion.

SIMMS, Justice, dissenting:

I must respectfully dissent. Not only do I believe that the nursing home is not liable for the intentional tort of its employee, but I am also troubled by the majority's determination that the cap on punitive damages may be lifted pursuant to 23 O.S.Supp.1986, § 9 under the facts of this case. In my estimation, this is, at best, a case of negligent hiring and training, and presents nothing further in the way of tort liability on the part of the nursing home.

## I.

## RESPONDEAT SUPERIOR LIABILITY

It is settled law that in order to hold an employer liable for the intentional tort of its

---

13. Several other state courts have reached similar decisions when confronted with the question of due process violations. *Independent School District No. 622 v. Keene Corp.*, 495 N.W.2d 244, 250–51 (Minn.App.1993); *Prudential Ins. v. Jefferson*, 839 S.W.2d 866, 877 (Tx.App.1992); *Viking Ins. v. Jester*, 310 Ark. 317, 836 S.W.2d 371, 378 (1992) (upheld the instructions given under the *Haslip* case, but did not address the questions of post-trial procedures or appellate procedures); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn.1992) (refined Tennessee law to permit punitive damages only when conduct is shown to be intentional, fraudulent, malicious or reckless); *Hoff v. Bower*, 492 N.W.2d 912, 914 (S.D.1992);

*Estate of Baxter*, 73 Ohio App.3d 512, 597 N.E.2d 1157, 1163 (1992); *Garnes v. Fleming Landfill Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991) (upheld the punitive damage law but set out five factors to be considered: (1) reasonable relation between the harm and the award, (2) reprehensibility of conduct, (3) profit from the wrongful conduct should not be less than the punitive damages, (4) punitive damages should be reasonably related to compensatory damages, (5) financial condition of the defendant.); *Oberg v. Honda Motor Co.*, 108 Or.App. 43, 814 P.2d 517, 522 (1991).

employee, the plaintiff must show first, that the relation of master and servant existed at the time and second, that the tortious act was committed within the scope of his authority. *Allison v. Gilmore, Gardner & Kirk, Inc.,* 350 P.2d 287, 293 (Okla.1960); *Tulsa General Drivers, Warehousemen, and Helpers Union v. Conley,* 288 P.2d 750 (Okla.1955). The majority recognizes the general rule that it is not within the scope of employee's employment to commit an assault on a third party, citing *Hill v. McQueen,* 204 Okla. 394, 230 P.2d 483 (1951), and *Tulsa General Drivers, Warehousemen, and Helpers Union v. Conley, supra.*

The majority finds, however, that the facts of this case place it within the exception that liability will be imposed on the master where the servant commits an assault in "furtherance of" and "fairly and materially incident to" his master's business, and in doing so it likens this situation to those in decisions such as *Hill v. McQueen, supra, Mistletoe Express Service, Inc. v. Culp,* 353 P.2d 9 (Okla. 1959), and *Russell–Locke Super–Service Inc. v. Vaughn,* 170 Okla. 377, 40 P.2d 1090 (1935).

Those cases however, are clearly distinguishable from the circumstances presented here and raise issues not before us. In *Russell–Locke,* for instance, we held the employer, an automotive battery sales and service business, was liable for its employee's assault because the facts warranted the jury's finding that the employee had been "acting in behalf and under instructions of" the employer which had sent him to the plaintiff's place of business to have plaintiff pay for a battery or retrieve the battery for which plaintiff had failed to pay. When the employee attempted to take the battery out of plaintiff's vehicle, plaintiff pulled him out of the car and a fight ensued. There, the employee was furthering his master's interest and engaged in following his instruction when the fight occurred which, we held, was therefore incident to performing the master's business. Noting there that the exception applies only when the employee's action is within the scope of employment, the Court stated:

" '[A]n act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' " 40 P.2d at 1094 (quoting Mechem on Agency, § 1960). *See also Ada–Konawa Bridge Co. v. Cargo, supra; Brayton v. Carter,* 196 Okla. 125, 163 P.2d 960 (1945); *Patsy Oil & Gas Co. v. Odom,* 186 Okla. 116, 96 P.2d 302 (1939).

The case at bar also differs from *Mistletoe Express Service, Inc. v. Culp,* 353 P.2d 9 (Okla.1959), in which we found the employer, a common carrier, liable for the intentional tort of its employee, a driver known as "Slugger", because the employer was aware of the employee's antagonistic, quarrelsome, pugilistic and hot-tempered nature and deliberately sent him with instructions to return an item which had previously been refused. The evidence showed:

"Mistletoe was expecting bad feelings about its return of the tube; and Mistletoe knowing this deliberately sent [Slugger] with specific instructions into a situation which, because of his known violent nature, was almost certain to trigger his temper and cause the very kind of result produced in this case." 353 P.2d at 15.

In stating the applicable law, the Court noted:

"In other words, the fact that at the time of the assault upon the third person the employee or agent was about his employer's business is not sufficient to affix the liability for the resulting damages upon the employer, but *it must be shown that the act complained of was done for the purpose of doing the work assigned to him.*" 353 P.2d at 16 (Emphasis added).

The same cannot be said for the case at bar, however. The employee was attempting to bathe the patient. Use of such force as slapping was against the policy of the nursing home. This is not a case where the employee was furthering the employer's interests, or performing under the employer's instructions. At most, the evidence shows that the employee likely slapped the patient as a personal reaction to the patient's combativeness. Whatever the cause, the employee was not acting within the scope of his employment and authority when he slapped the patient and the employer cannot be held responsible for the intentional tort. In short, while bathing the patient was within the scope of his employment, slapping him was not.

The nursing home does not contest on appeal that it was negligent in failing to properly investigate potential employees and train this employee. Whether the employee was properly trained in how to handle a combative Alzheimer's patient or not, there is no evidence to warrant a finding that assaulting the patient was within the scope of the employee's authority or employment. The employee's actions here were more in line with those of the employee/bus driver in *Oklahoma Ry. Co. v. Sandford*, 258 P.2d 604 (Okla.1953), in which the bus driver became angry at the driver of a car, exited from the bus, and assaulted the other driver. In *Sandford* we determined that the bus driver stepped aside from his employment to do an act which was neither beneficial to nor in the best interests of his employer. As a result, we concluded that the employer/bus line was not liable for the assault upon the automobile driver by the bus driver.

So too, in *Allison v. Gilmore, Gardner & Kirk, Inc.*, 350 P.2d 287, 293 (Okla.1960), an action brought by plaintiff who was assaulted by the employee/driver of defendant when plaintiff attempted to test the temperature of the gasoline in defendant's truck, this Court concluded "there was nothing connected with the employment of the truck driver, King, whose duties were to drive the truck of the defendant and deliver gasoline, that would

warrant his fighting with plaintiff and did not come within the scope of his employment." *See also, Tulsa General Drivers, Warehousemen, and Helpers Union v. Conley, supra,* where we held that a union was not liable for the assault by one of its hired picketers upon a worker for the business being picketed because the picketer's actions could not "properly be anticipated as an incident to the exercise of ordinary authority to act as a peaceable picketer."

Although the nursing home may be liable to plaintiffs on the theory that the nursing home negligently failed to investigate its employee's background to determine whether he had a history of violence, a liability which the nursing home does not dispute, that failure to investigate amounts to negligence only. The defendant cannot be held responsible for the intentional assault upon a patient by its employee where it had no knowledge that the employee had a propensity to violence and where the employee's conduct was outside the scope of his authority and employment. *Tulsa General Drivers, Warehousemen, and Helpers Union v. Conley, supra.*

## II.

## PUNITIVE DAMAGES

This Court has never considered a case in which the cap on punitive damages was lifted pursuant to the amended provisions of 23 O.S.Supp.1986, § 9, and the case before us is not an appropriate one for allowing limitless punitive damages.

In general, § 9 permits a jury to award punitive damages in tort actions where the jury finds that the defendant was guilty of conduct evincing, *inter alia,* a wanton or reckless disregard for the rights of another. Punitive damages are, however, limited to the amount of the amount of actual damages awarded in most cases. Only when the trial court finds on the record that clear and convincing evidence shows that the defendant is guilty of such conduct may the cap on punitive damages be lifted. The case before

us does not present a situation in which the Legislature intended to apply the § 9 exception to the cap.

When the Legislature chose to limit punitive damages and to provide for the lifting of that limitation under only extreme circumstances, it further provided that the provisions of § 9 "shall be strictly construed." 23 O.S.Supp.1986, § 9(B). The majority fails to recognize this vital provision.

This Court has long held that because of the highly penal nature of punitive damages, they should not be lightly imposed. *Slocum v. Phillips Petroleum Co.,* 678 P.2d 716 (Okla.1983). In addressing punitive damages, this Court stated the long-standing law in Oklahoma as follows:

"To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some elements of fraud, malice or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence-such disregard of another's rights-as is deemed equivalent to such intent.

\* \* \* \* \* \*

Exemplary damages are allowed after the trier of the fact determines the guilt of the transgressor of acts not tolerated by society. Exemplary damages are highly penal and punishment thereof should not be lightly imposed." 678 P.2d at 719.

In *Slocum,* we determined that although Phillips Petroleum Company was negligent for failing to ascertain who owned the property across which they were constructing a pipeline, there was no evidence that Phillips' acts were actuated by or accompanied with an evil intent or the result of gross negligence when it trespassed and constructed the pipeline three feet outside of its valid easement area. Thus, we held the trial court erred in submitting the issue of punitive damages to the jury.

In the case at bar, the jury could have found that the nursing home was negligent in failing to investigate when hiring the employee or in failing to properly train the employee. However, there was not clear and convincing evidence of such recklessness or gross negligence as to warrant the lifting of the cap on punitive damages.

Although the actions of the *employee* in the case at bar could be characterized as malicious or oppressive, those actions cannot be imputed to the nursing home. As noted in Part I above, the nursing home is not responsible for the actual damages resulting from the nurse aide's personal attack because he was not acting within the scope of his authority and employment. The simple fact is that the trial judge determined that there was clear and convincing evidence of conduct *on the part of the employee* which could be described as reckless and wanton, but the majority opinion wrongly allows such conduct to be imputed to the employer.

If there was evidence suggesting the nursing home was liable for punitive damages, such evidence would necessarily be in the form of gross negligence or reckless disregard of another's rights, and the record simply *does not contain clear and convincing evidence* of such. Thus, the trial court erred in allowing the jury to award punitive damages over the amount of actual damages awarded.

Additionally, the majority has refused to consider a crucial issue concerning the verdict forms utilized on the basis of the parties failure to raise it. *See* footnote 2 of the majority opinion. A cursory review of the record discloses that there is error apparent on its face, and I believe the matter constitutes fundamental error. The verdict form shows that the jury found for plaintiff on the negligent hiring and training theory (Count 1) and on the intentional tort theory (Count 2). However, it is unclear whether the $50,000.00 awarded was for Count 1 or Count 2.[1] This is crucial because punitive damages may

1. The jury awarded $50,000.00 as actual dam-

ages to the plaintiff, despite the parties stipulat-

only be given when actual damages have been awarded. *Moore v. Metropolitan Utilities Co.,* 477 P.2d 692 (Okla.1970); *Phillips Machinery Co. v. LeBlond, Inc.,* 494 F.Supp. 318 (N.D.Okla.1980).

The verdict form itself states that a punitive damage award may not be based upon a finding for plaintiff on Count 1. Therefore, if the $50,000.00 was awarded as damages for Count 1, the punitive damages award cannot stand. Only if all or a portion of the $50,-000.00 actual damages are awarded for Count 2 may the jury even consider punitive damages. There is nothing in the record to indicate whether any of the actual damages were awarded for Count 2. The parties and this Court must resort to speculation in order to determine upon which Count the punitive damages award was based, and this Court has long held that a verdict cannot be based upon mere speculation and conjecture. *Elms v. Chicago, Rock Island, and Pacific Railroad Co.,* 375 P.2d 886 (Okla.1962). Because the verdict form is unclear as to which Count the punitive damages are based upon, the verdict and judgment cannot stand. I would reverse the judgment of the district court and remand this cause for retrial.

ing and the patient's physician determining that medical treatment was not necessary. The jury then awarded $1,200,000.00 in punitive damages.